## KRUMB et al. v. PORTER et al.

### No. 10956.

Court of Civil Appeals of Texas.
San Antonio.

May 14, 1941.

Rehearing Denied June 18, 1941.

D. O. Klingemann and F. V. Klingemann, both of Karnes City, L. J. Gittinger, of San Antonio, and R. M. Bounds, of McAllen, for appellants.

Dilworth & Shireman, of San Antonio, W. T. Scarborough, of Kenedy, and W. M. Porter, of Beeville, Texas, for appellees.

NORVELL, Justice.

This is an appeal from an order of the District Court of Karnes County refusing to probate the purported last will and testament of Sallie S. Boyce, deceased. Appellants, Mrs. Krumb and others are the proponents of said will and devisees or legatees thereunder. The appellees (contestants) are the heirs at law of Mrs. Boyce. This cause originated in the County Court of Karnes County which court refused to admit the will to probate. Upon appeal to the district court the case was tried without a jury, and no findings or conclusions were requested of the trial judge. We therefore presume that the trial court made all findings favorable to the judgment refusing to probate the will which have support in the evidence.

This appeal presents one question only for our determination, namely, Does the evidence show conclusively as a matter of law, that Sallie S. Boyce was of testamentary capacity at the time of the execution and publication of the will here involved? This question is in accord with the wording of appellants' contention as stated in their brief. As we must presume the trial court found that the testatrix did not possess testamentary capacity at the time of the execution of the will we may say conversely that the question of whether or not there is any evidence to support this implied finding is here presented for our determination.

Appellees attack the sufficiency of appellants' assignments of error. In holding that the above question and none other is involved in this appeal, we have applied the following rules: In determining the sufficiency of an assignment of error, a liberal policy of construction is employed. Lang v. Harwood, Tex.Civ.App., 145 S.W. 2d 945. However, an appellate court can not by construction supply an assignment of error as the authority of a Court of Civil Appeals "to revise the action of the lower court is limited to those questions (not fundamental) duly assigned as error, and it has no discretion, even though it thinks the ends of justice require such course, to substitute a method of its own for reviewing the judgment of the lower court for that method prescribed by the law making power." Clonts v. Johnson, 116 Tex. 489, 294 S.W. 844, 846. Assignments of error must be set forth in appellant's original brief. Assignments contained in a reply brief can not be considered,

except perhaps in exceptional cases. No exception to the general rule exists in this case. Article 1844, Vernon's Ann.Civ. Stats.; Rules of the Courts of Civil Appeals, Nos. 26, 27, 32 and 37; St. Louis Southwestern Railway Co. v. Texas Packing Company, Tex.Civ.App., 253 S.W. 864. An assignment asserting that the evidence conclusively establishes a certain fact or compels a certain conclusion raises a question of law and does not invoke the jurisdiction of the Court of Civil Appeals to determine a fact issue. Liberty Film Lines v. Porter, Tex.Com.App., 146 S.W.2d 982; Rodriguez v. W. O. W. Life Insurance Society, Tex.Com.App., 145 S.W.2d 1077.

■■ The burden of proving the testamentary capacity of Mrs. Boyce rested upon appellants as proponents of the will. Article 3348, Vernon's Ann.Civ.Stats.; Payne v. Chance, Tex.Civ.App., 4 S.W.2d 328. Appellants made out a prima facie case of testamentary capacity by introducing the testimony of the attesting witnesses to the will, as well as that of attending physician of Mrs. Boyce and two other doctors. As above pointed out, the trial court found against appellants upon the issue of testamentary capacity. Appellants' testimony upon this issue cannot be held to be conclusive of the issue, unless we can say from the record presented that there was no evidence conflicting therewith, that is, no evidence supporting the trial court's implied finding.

It appears that Mrs. Boyce died on March 20, 1939. The disputed will was executed on March 11, 1939. At the time of her death, Mrs. Boyce was approximately seventy-nine years of age. About ten months prior to her death, Mrs. Boyce fractured her hip and was confined to her bed from the date of this injury until the date of her death. After leaving the hospital she stayed, as a paying guest, at the home of Mrs. Irene Parr, one of the named devisees in the will.

Dr. John W. Worsham, a witness for appellees, testified that he had treated Mrs. Boyce for a period of about three months while she was in a hospital immediately following the hip injury sustained by the testatrix. According to Dr. Worsham, Mrs. Boyce was somewhat undernourished and anemic. She was also suffering from cerebral arteriosclerosis. This doctor noted a marked decline in Mrs. Boyce's physical and mental condition during the three months he treated her, prior to the time she left the hospital and went to Mrs. Parr's home in San Antonio. She seemed to have difficulty in holding one line of thought. Dr. Worsham also testified that a mental condition caused by cerebral arteriosclerosis generally became worse as the disease or condition causing the mental impairment was usually progressive rather than static. This witness, however, had not seen Mrs. Boyce since she left the hospital.

■ The witness L. J. Gittinger testified that he was a practicing attorney and that between October, 1938, and March 11, 1939, he had drawn three different wills for Mrs. Boyce, including the one here in dispute. Mr. Gittinger objected to testifying as to his transactions with Mrs. Boyce, as did the appellants, upon the ground that Gittinger's communications with Mrs. Boyce were privileged. It is well settled that the privilege relating to communications between attorney and client is one which may be claimed by the client. The privilege is not that of the attorney. 44 Tex.Jur. 1071, § 100. Furthermore, the rule is that:

■ "In regard to the execution and drafting of wills the knowledge gained by the attorney is privileged during the lifetime of the testator. But the confidence reposed is temporary only and after the death of the testator, the attorney may testify as to any facts affecting the execution or contents of the will." McCormick and Ray, Texas Law of Evidence, page 318, § 227.

See, also, 44 Tex.Jur. 1067, § 96; Pierce v. Farrar, 60 Tex.Civ.App. 12, 126 S.W. 932; Glover v. Patton, 165 U.S. 394, 17 S. Ct. 411, 41 L.Ed. 760; Hudson v. Fuson, Tex.Civ.App., 15 S.W.2d 166. The latter case also holds that such testimony is not prohibited by Article 3716, Vernon's Ann. Civ.Stats., commonly referred to as the "dead man's statute." We therefore hold that the testimony of Gittinger can properly be considered in determining whether or not Mrs. Boyce had the necessary testamentary capacity at the time of the execution of the will.

Gittinger testified that he noticed a considerable deterioration in the mental and physical condition of Mrs. Boyce between the time he saw her in September and October, 1938, and the time he saw her in January, 1939, when the second will was drawn; that shortly before the will here involved was drawn up Mrs. Boyce sent for him but he at first refused to go; that one of his reasons was that he did not consider that

she was capable of making a will at that time and that he had written two former wills for her which he had carefully prepared and that she had destroyed both of them.

Gittinger, however, did see Mrs. Boyce. His testimony as to what occurred upon this occasion is as follows: "I went in and told her that I heard that she wanted me to make another will, and she said she did. She was very irascible, impatient, I would say, cranky, and I asked her, I said, 'Mrs. Boyce, how do you want to dispose of this will? You have already torn up two of them that I prepared, how do you want to make this will?' She said, 'I want to give it all to Irene (Parr)' and I said, 'Mrs. Boyce, you are a very sick woman, and you are a patient in Mrs. Parr's house. If you have any idea of this will standing up at all, you certainly cannot give it all to Irene.' She said, 'Irene has been kinder to me than anybody, and I would like for her to have it all.' I said, 'that is out of the question; I wouldn't prepare a will under those circumstances.' Then she said, 'I would like to see that Ed Richard Parr and Cordie Lee, Mrs. Krumb, get the biggest portion of this estate, if you won't fix it where Irene should get it all.' I said, 'I think you shouldn't disinherit your nephews and nieces.' "

Over his protest that he was not a mental expert, Gittinger was questioned at length concerning his opinion of the mental capacity of Mrs. Boyce. We quote from the statement of facts:

"Well, if you want me to answer it, the woman, in mind, was insane. (Sic.) I say I do not think she was insane, I do not think she was of unsound mind, as that term is defined legally. She didn't know the difference between right and wrong, which is the criminal criterion in determining whether or not a person is crazy, and to my mind, using that criterion, I must say she did not have testamentary capacity.

"Q. Now than, suppose the law lays down two definitions in this kind of a case, to the effect that if she knows the nature and extent of her property, generally; and if she knows the nature and extent of the people to whom she wants to give her property, and if the will is her desire, sets forth her desires, then the Court would say that she would be of sound mind. Now, applying that definition, would you say that Mrs.

Boyce was of unsound mind, or would you say that Mrs. Boyce was of sound mind? A. Well, if that is the legal definition, I would say that she was of sound mind.

"Q. At the time of the execution of the will? A. Yes, sir. * * *"

The contention of appellants seems to be that as Gittinger in effect testified that in his opinion Mrs. Boyce was possessed of testamentary capacity, as that term was defined in the question above quoted, and that the testimony of Dr. Worsham as to Mrs. Boyce's mental condition related to a period of time six months prior to the date of the execution of the will, the testimony of neither witness can be considered as contradicting the testimony of appellants' witnesses, which was to the effect that Mrs. Boyce did possess testamentary capacity at the time the will was executed.

■ With this contention we can not agree. According to Gittinger, the mental deterioration of Mrs. Boyce observed by Dr. Worsham continued. The theory that the deceased was suffering from mental impairment as a result of cerebral arteriosclerosis and that her condition became progressively worse is supported by the testimony. The fact that Mrs. Boyce destroyed two former wills prepared at her request and then desired to make an entirely different will, leaving all her property to Mrs. Parr, certainly indicates mental instability, as do certain other circumstances surrounding the execution of the questioned will as testified to by Gittinger.

■ Gittinger's conclusion or opinion that Mrs. Boyce did have testamentary capacity as that term was explained by the questioning attorney, was of course not binding upon the trial court. As a matter of fact, the question was improper. This was a question for the trial court in the absence of a jury. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64; Hudson v. Fuson, Tex.Civ.App., 15 S.W.2d 166.

We can not say that there is no evidence supporting the trial court's finding, nor that the evidence conclusively shows that Mrs. Boyce was possessed of testamentary capacity at the time of the execution of the will here involved. Salinas v. Garcia, Tex. Civ.App., 135 S.W. 588, writ refused.

No reversible error being shown, the judgment of the trial court should be affirmed, and it is accordingly so ordered.