## CAPITOL BARBER AND BEAUTY SUPPLY, INC., Appellant,

v.

## REALISTIC, INC. and Revlon, Inc., Appellees.

### No. 6156.

Court of Civil Appeals of Texas, Waco.

Dec. 31, 1980.

Harriet Samon Owen, Austin, for appellant.

David W. Hilgers, Thomas H. Watkins, Hilgers, Watkins & Hays, P. C., Austin, for appellees.

HALL, Justice.

This suit involves two original actions on open accounts and a counterclaim for wrongful attachment.

Appellees-plaintiffs Revlon, Inc., and Realistic, Inc. (a subsidiary of Revlon), instituted separate suits on sworn petitions alleging that they had sold merchandise on open accounts to appellant-defendant Capitol Barber and Beauty Supply, Inc.; that appellant had accepted the merchandise, but had failed to pay the accounts in full; and that the balance due and owing to them

was $9,515.91 and $24,878.19, respectively. These original petitions were filed on July 2, 1971. On the same date appellee Realistic sued out a writ of attachment, which was granted in an ex parte hearing. The entire stock of goods owned by appellant was attached pursuant to this writ. Shortly thereafter both appellees petitioned the court to allow them to move the attached goods that had been produced or sold by them and to allow them to redistribute these goods to other dealers for resale, the reason therefor being that most of the goods were perishable and would deteriorate if not stored properly. Subsequently, appellees petitioned the court to sell the attached goods that had been produced or manufactured by other companies, the reason again being that these goods were also perishable and would deteriorate in storage. Both motions were granted. The Revlon and Realistic products were redistributed by the companies, and the other property was sold by the sheriff for a net amount of $2,500.00, which was deposited into the registry of the court.

On July 23, 1971, appellant filed a motion to quash the writ of attachment, sworn denials of the alleged accounts sued on, and counterclaims against appellees as alleged conspirators for actual and exemplary damages upon the ground that the attachment was wrongful.

No further action was taken in this case until June of 1977. By that time there was no question that the attachment had been wrongfully sued out, for the U.S. Supreme Court had held that ex parte attachments violated constitutional due process guarantees. *Fuentes v. Shevin*, 407 U.S. 69, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Thus, when the case was tried on November 27, 1978, the primary issue involved was a determination of the damages owing to appellant for the wrongful attachment.

The cases were tried together to the court without a jury. Judgment was rendered on May 20, 1979, that Realistic recover $19,-629.74 on its account; that Revlon recover $9,515.91 on its account; that appellant recover jointly and severally of Realistic and Revlon actual damages in the amount of $23,000.00 and exemplary damages in the amount of $3,000.00; and that the sums awarded be offset with the result being that Revlon and Realistic recover against appellant the sum of $3,145.65. Costs were assessed against appellant.

Appellant first contends that the trial court erred in awarding only $23,000.00 in actual damages for the wrongful attachment. Appellant asserts that the evidence conclusively established that the value of the goods attached was $80,954.90; that the value of the goodwill of appellant's business was also recoverable in this action since the evidence conclusively established that the business was totally destroyed by the wrongful attachment; and that the value of the goodwill was conclusively established to be $100,000.00. Appellant does not assert that the trial court's findings of $23,-000.00 actual damages and $3,000.00 exemplary damages are against the great weight and preponderance of the evidence, and it does not seek relief on that ground. Rather, appellant requests us to render judgment on the amounts it asserts were conclusively proved by the evidence. Accordingly, if there is any evidence in the record which conflicts with or disputes appellant's claim for damages in the amounts of $80,954.90 and $100,000.00, then the contentions must be overruled. *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972, 975 (1951); *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 650 (Tex.1978); *Krumb v. Porter*, 152 S.W.2d 495, 496 (Tex.Civ.App.—San Antonio, 1941, writ refused).

■ As to the value of the stock, the record shows that appellant's $80,954.90 figure is based on the sum of five exhibits in evidence which show the cost of the items contained in appellant's inventory at the time of the attachment. The witness who prepared these exhibits admitted that one of the five exhibits duplicated the items contained on another of these exhibits. Thus, the $80,000.00 plus figure includes the value of some items twice. Furthermore, the constable in charge of attaching the merchandise testified that some of the in-

ventory was not seized, but was left in the store because it was out of date. Also, Mr. and Mrs. James E. Nichols, who owned all of appellant's stock and operated the business, testified that they purchased the company in 1969, two years prior to the attachment; that the purchase price was $60,-000.00 which included the entire inventory at that time and also the goodwill of the business that had been in existence for about fifteen years; and that the inventory seized in 1971 was approximately the same as that purchased in 1969. This evidence conflicts with appellant's assertion that the value of the goods seized was $80,954.90.

With regard to the value of the goodwill of the business, we again note that the stock and the goodwill of the business were purchased for $60,000.00 in 1969. Later in 1969, the business burned and operations were totally shut down for seven weeks. Appellant had to incur additional indebtedness because its insurance was inadequate to cover the losses resulting from the fire. At the time of the 1969 purchase, appellant employed three salesmen to generate business from its 1,500 active accounts. At the time of the attachment, no salesmen were employed by the company. One salesman had been drafted; one had been fired for stealing; and one had gone to work for a competitor. No profit was shown by appellant after the 1969 transfer. In fact, Mr. and Mrs. Nichols were having difficulty collecting accounts receivable promptly enough to meet appellant's own credit obligations; and they decided that the business could not continue to make credit sales, but instead would have to shift to a "cash and carry" operation in order to survive. All of this evidence conflicts with appellant's claimed valuation of $100,000.00 for the goodwill of the business.

The record does not support appellant's contentions that the value of the goods and the value of the goodwill were conclusively established to be $80,954.90 and $100,000.00. The contentions are therefore overruled.

Appellant also asserts that the trial court erred in awarding judgment in favor of appellees Realistic and Revlon in the amounts of $19,629.74 and $9,515.91, for the reason that the undisputed evidence showed that the sums due on the accounts were $22,746.28 to Realistic and $2,600.16 to Revlon. Appellees concede that the awards made in their favor are erroneous and that the figures asserted by appellant are correct under the record. We therefore sustain appellant's points regarding the amounts due to appellees on their accounts.

Appellant contends the trial court erred in failing to grant appellant prejudgment interest "on the sum of $80,954.90" from the date of the wrongful attachment, and it requests us to render judgment solely on that basis. Appellant does not assert that it was entitled to prejudgment interest on the sum of $23,000.00 found by the court to be the value of the stock of merchandise at the time of wrongful taking, and it does not seek relief here on that ground. As we have said, appellant did not conclusively establish that it was entitled to recover $80,954.90 as the value of its stock. For this reason, we overrule appellant's complaint without deciding appellees' contention that appellant's pleadings (which we have not fully detailed) were not sufficient to support an award of prejudgment interest.

Appellant's remaining points and contentions are without merit. They are overruled.

Appellees also contend for prejudgment interest, asserting by cross point that under the provisions of Article 5069–1.03, Vernon's Tex.Civ.St., and the evidence, they were entitled to interest at the rate of 6% per annum from January 1, 1972, until May 20, 1979, the day of judgment, on the amounts due on their accounts. We overrule this contention.

At all times pertinent to this case, Article 5069–1.03 provided as follows:

"When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed ... on all open accounts, from the first day of January after the same are made."

■ Appellees' petitions contained prayers for "interest," and Mr. Nichols' undis-

puted testimony established that the last sale of merchandise to appellant by appellees was made in 1971. However, there is no evidence that the parties did not agree upon a "specified rate of interest." Insofar as the record shows, they might have agreed that appellant would pay some rate of interest less than 6% on the accounts, or no interest. Without proof that the parties did not agree upon a rate of interest, appellees were not entitled to recover prejudgment interest based upon the provisions of Article 5069–1.03.

The judgment is reformed to provide that appellant is entitled to recover from appellees, jointly and severally, the sum of $653.56 ($26,000.00 actual and exemplary damages, less $22,746.28 due to Realistic on its account and $2,600.16 due to Revlon on its account). Upon the erroneous determination that appellees were jointly entitled to a net recovery of $3,145.63 from appellant after offsets, the trial court ordered all of the proceeds of sale of appellant's stock, $2,500.00, which had been deposited in the registry of the court, paid to appellees. This order is reformed to provide that $653.56 of the $2,500.00 shall be paid to appellant, and the remainder shall be paid to appellees. The order assessing costs of the trial against appellant is reversed. The costs of the trial and of this appeal are taxed against appellees.