**BRENTWOOD FINANCIAL CORPORATION and Chateau Orleans, Ltd., Appellants,**

v.

**Heidi LAMPRECHT, Appellee.**

**No. 04–86–00240–CV.**

Court of Appeals of Texas, San Antonio.

July 31, 1987.

Rehearing Denied Sept. 22, 1987.

James E. Ross, Charles W. Kelly, Cindy A.L. Garcia, David A. Furlow, Houston, for appellants.

George LeGrand, Pat Maloney, Jr., Ellen Mitchell, Richard C. Danysh, Annalyn G. Smith, San Antonio, Sydney N. Floyd, Houston, for appellee.

Before CADENA, C.J., and CANTU, and REEVES, JJ.

## OPINION

REEVES, Justice.

Appellants, Brentwood Financial Corporation and Chateau Orleans, Ltd. appeal an award of damages in a jury trial in favor of Heidi Lamprecht arising out of an explosion at the Chateau Orleans Apartments.

On December 31, 1984, a natural gas explosion occurred at the Chateau Orleans Apartments in San Antonio. The explosion occurred in the gas heater of a downstairs apartment. Heidi Lamprecht, a tenant in the apartment directly above the one where the explosion originated, was thrown out of her apartment by the force of the explosion. She landed in the parking lot of the apartment complex and sustained severe physical injuries.

Ms. Lamprecht, appellee, brought suit against Brentwood Financial Corporation, Chateau Orleans, Ltd., the City of San Antonio, Texas, and the City Public Service Board of the City of San Antonio, alleging negligence in the failure to discover and repair a gas leak, and seeking exemplary damages for defendants' conscious disregard and total neglect.[1] Appellants, Brentwood Financial Corporation and Chateau Orleans, Ltd., filed a cross-action against defendants City Public Service Board and City of San Antonio for their alleged negligence in failing to safely provide gas to the apartment complex.

Appellant Brentwood Financial Corporation filed a motion with the trial court to consolidate this case with five other cases allegedly arising out of this explosion, which was denied.

On January 21, 1986, the trial court signed a judgment awarding appellee recovery against appellants only, denying appellants recovery on their cross-claims, and denying all other relief. On February 7, 1986, the trial court signed a modified judgment in conformity with the jury's findings. The trial court awarded appellee $222,000.00 against Brentwood Financial Corporation and Chateau Orleans, Ltd., jointly and severally, $1,500,000.00 against Brentwood Financial Corporation, and $1,000,000.00 against Chateau Orleans, Ltd.

Appellants' first point of error urges the trial court erred in failing to consolidate this cause with five other cases filed against them. Appellants claim the cases all arise out of the same circumstance, that is, the explosion at the Chateau Orleans Apartments.

Rule 174 of the Texas Rules of Civil Procedure provides that a trial court may consolidate actions pending before it which involve a common question of law or fact, and make such orders as may tend to avoid unnecessary costs or delay. The issue of consolidation is within the broad discretion of the trial court and we shall not reverse the court's judgment unless there is an abuse of that discretion. *Allison v. Arkansas Louisiana Gas Co.*, 624 S.W.2d 566, 568 (Tex.1981); *Maxwell v. Mason*, 682 S.W.2d 640, 645 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); TEX.R. CIV.P. 41, 174.

Appellants stated in their motion for consolidation that the causes were the same in each case, that the expert witness to be relied on was the same in each case, and that, except in two cases, the plaintiffs' attorney was the same in each case. No supporting documents are included in the

1. Several other plaintiffs, defendants, and cross-parties were named in the pleadings, but only appellee Lamprecht recovered. Lamprecht, Brentwood Financial Corporation, and Chateau Orleans, Ltd. are the parties to this appeal.

transcript. The pleadings from the other causes are not attached to the motion. Under such circumstances we are unable to say the trial court erred in denying consolidation. The other causes may have included issues, evidence, or witnesses which may have unduly prejudiced one or more plaintiffs. There is no showing the other causes were ready to go to trial at that time. Appellants have failed to show that the trial court abused its discretion.

We overrule their first point of error.

Appellants complain the trial court erred in failing to disqualify thirty of the thirty-six veniremen because they held fixed opinions concerning the cause of the explosion.

During jury voir dire counsel for appellants asked the following:

I want to see your hands, every one of you who has the opinion, or the thought, or the belief that the cause of the explosion *either was,* or *probably was,* or *possibly was,* natural gas. Let me see you [sic] hands. (Emphasis added.)

Thirty veniremen raised their hands in response. Appellants' attorney immediately moved to disqualify the thirty veniremen because they held fixed opinions about a material issue. The trial court overruled the motion.

Appellants' counsel later asked the veniremen the following: "I want to see the hands of all of you who have an opinion about whether it was natural gas."

Fourteen jurors raised their hands. Counsel made no motion to disqualify these veniremen. The complaint as to these fourteen as it pertains to this question is waived.

TEX.GOV'T CODE ANN. § 62.105(4) (Vernon Supp.1987) provides that a person is disqualified from serving as a juror in a particular case if he "has a prejudice in favor of or against a party in the case...." Whether the venireman is biased or prejudiced is a factual determination to be made by the trial court. Once the bias or prejudice is established, the juror is disqualified as a matter of law. *Swap Shop v. Fortune,* 365 S.W.2d 151, 154 (Tex.1963). Bias or prejudice may be toward one of the parties as well as the subject matter of the lawsuit. *State v. Burke,* 434 S.W.2d 240, 242 (Tex.Civ.App.—Waco 1968, no writ).

The Supreme Court, in *Compton v. Henrie,* 364 S.W.2d 179 (Tex.1963), defined the terms "bias" and "prejudice":

Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined for it means *prejudgment,* and consequently embraces bias; the converse is not true. (Emphasis added.)

*Id.* at 182.

■ The test is whether the evidence shows the juror will not act with impartiality or will act with prejudgment. In asking the question in the manner counsel did, he elicited the response that the jurors could have the opinion it was, probably was, or possibly was natural gas that caused the explosion. The attorney did not pin down which applied to any juror. Even if all the jurors had answered that they thought natural gas possibly was the cause, appellants have not established a bias or prejudgment. The jurors have merely indicated that natural gas could be a cause—not that they believed it was the cause. Appellants failed to establish that any juror held a fixed opinion and would not act with impartiality. We, therefore, hold the trial court did not err in refusing to disqualify the jurors.

We overrule appellants' second point of error.

Appellants complain the trial court erred in failing to discharge the entire jury panel after two veniremen made comments which appellants contend prejudiced the entire panel.

■ The first instance concerns a comment by venireman Michael Anthony Gruich. On individual voir dire, Mr. Gruich stated he had been a Green Beret and had some training or expertise in arson and explosion. Mr. Gruich declined to describe the extent of his expertise. The following

dialogue occurred between appellants' counsel and Mr. Gruich:

> Q. (By appellants' counsel): My bottom-line question is, do you feel uncomfortable, that you are going to be biased towards her [plaintiff] and against this apartment, and not be able to give both sides a fair trial? I need to know.
>
> A. (By Mr. Gruich): Other than gas, I would like to know what the hell caused the explosion, you know.
>
> Q. I'm going to prove that for you.
>
> A. Because I don't think there is anything else of that type, not unless she had dynamite in there.

Mr. Gruich stated he would lean toward the plaintiff. Counsel approached the bench and the trial court excused the venireman from service.

Counsel for appellants moved to strike the entire panel because:

> Mr. Gruich, ... has previously involved the panel, that he is trained as an explosives expert with the Green Berets, he has said that the nature of his training is such that he would not like to discuss it, he has said that he has a particular field of expertise, a particular expertise in the field of explosives, and has expressed the opinion in front of the jury panel that unless there was dynamite or something in this apartment, he can't see how it could be anything other than natural gas.
>
> All the panel has heard that response, has heard him express his own qualifications and his own opinions....

The trial court overruled the motion to strike but instructed the jury panel that what any juror said was not evidence and that they could consider only evidence given from the witness stand.

It is up to the trial court's discretion whether to excuse a potential juror for cause. *Texas Employers Insurance Association v. Loesch*, 538 S.W.2d 435, 440 (Tex.Civ.App.—Waco 1976, writ ref'd n.r. e.). Appellant asked no follow-up questions to the panel to establish whether the statement may have caused any panel member to become biased or prejudiced. Therefore, we must review the complaint

under the abuse of discretion standard. The trial court instructed the jury to accept as evidence only the testimony given from the witness stand. We find the instruction to be sufficient to cure any adverse effect juror Gruich's statement may have had. Furthermore, appellants have failed to demonstrate that the trial court's refusal to strike the jury panel was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Texas Employers Insurance Association v. Loesch*, 538 S.W.2d at 441; TEX.R.CIV.P. 434.

Appellants' second complaint concerning the trial court's failure to strike the entire panel occurred during voir dire of Margaret R. Lane, an employee of an insurance company in policy sales and service. Counsel for appellee questioned Ms. Lane concerning an automobile accident involving her brother. Counsel asked Ms. Lane to "tell me what that was about." She responded, "There was no suit, because the other person didn't have any insurance. It was just settled, uninsured." Appellants' attorney, out of the hearing of the panel, moved to strike the entire panel because "the implication or the answer ... being that it is necessary that before there be a lawsuit that there be insurance involved" injected the issue of insurance into the case. Appellants' attorney requested that no instruction be given the panel. The trial court overruled the motion to strike.

Reversal in instances in which insurance is mentioned during voir dire will be required when counsel has deliberately done something to inject insurance into the picture or when the inference is plain and unmistakable that the defendant is protected by liability insurance. *Brown v. Poff*, 387 S.W.2d 101, 103 (Tex.Civ.App.—El Paso), *writ ref'd n.r.e. per curiam*, 392 S.W.2d 113 (Tex.1965). When insurance is mentioned, it is proper for the trial court to instruct the jury not to consider the improper statement. *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962). However, appellants wanted no curative instruction. They thus waived any possible error. Further, we are not authorized to reverse on

this type of complaint unless the error is reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Dennis v. Hulse*, 362 S.W.2d 308 at 309; *Texas Employers Insurance Association v. Loesch*, 538 S.W.2d at 441; *Meyers v. Searcy*, 488 S.W.2d 509, 515 (Tex.Civ.App.—San Antonio 1972, no writ); TEX.R.CIV.P. 434. We do not find that Ms. Lane's unsolicited remark carries the connotation appellants contend.

The trial court did not err in refusing to strike the entire jury panel. Appellants' third and fourth points of error are overruled.

Appellants complain the trial court engaged in inappropriate and prejudicial conduct during jury voir dire which precluded them from pursuing relevant questions and caused the jury panel to be reluctant to give frank and honest responses.

Appellants maintain Judge Curry told the jury a smart lawyer would ask only a few questions on voir dire, told the jury they had no opinions about the case, called appellants' attorney a "flam-bam artist," accused appellants' counsel of asking unfair questions, and made certain other objectionable comments.

The trial court has wide discretion in conducting the trial, including voir dire of the veniremen. *Texas Employers Insurance Association v. Loesch*, 538 S.W.2d at 440; *Fenton v. Wade*, 303 S.W.2d 816, 817 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.). We therefore will look at each of the complained of statements made by Judge Curry in the context in which he made them. We have set out the objected to statements below and have underscored the specific language appellants challenge.

In his introductory remarks to the panel prior to the voir dire, Judge Curry explained the jury selection process and said:

I told you that the lawyers were going to ask some questions. As I mentioned to you, the lawyers will not ask any questions that are not relevant, because I will not permit them to do so.

But I have found out, ladies and gentlemen, from many years on this bench, that *the smart lawyer hardly ever asks*

*a question.* You can almost judge the intelligence of a lawyer by the number of questions he or she asks. And we've got some very bright lawyers in this case. They are not likely to ask many questions.

So that's the way it usually goes. And if you are not asked a question, I don't want you to feel bad. I don't want you to say, 'That laywer must not like me.' It's not that at all. It's that that lawyer is bright and intelligent, and he or she doesn't need to ask many questions.

The judge further explained that much of the basic information had already been obtained from the members of the panel through the survey the jurors completed prior to voir dire.

Appellants made no objection to the court's remarks. It is obvious that the court was attempting to discourage a lengthy voir dire examination but the statement did not unduly prejudice appellants, their counsel, or their defense. Moreover, he did attempt to allay any adverse feelings by panel members in the event they were not personally questioned.

When appellants moved to strike thirty of the thirty-six veniremen for cause, Judge Curry gave the following instructions:

Ladies and gentlemen, let me ask you something. Are all of you ready to sit in this jury box, to listen to the evidence, and go by the evidence, and not by what the Counsel has just asked you about having a fixed opinion? Do any of you have a fixed opinion about what the cause of this explosion was? Do any of you have [sic] a definite certainty about what the cause of this accident was? Are any of you unwilling to sit on this jury because you cannot be fair and because you have a fixed opinion about the cause?

Okay. Now the Counsel has asked you whether or not your impression was—I don't know how he posed the question, but the impression was this was caused by natural gas, or something of that nature. *You don't know what the cause of it was any more than I do.*

Do any of you know for positive what the cause of this accident was?

The Court later continued in that same vein.

> Let me tell you this, ladies and gentlemen. At this point you haven't heard anything. *You could not form an honest-to-God opinion,* an honest and fair assumption of anything without having heard any evidence. And that's the whole point.

Appellants made no objection to the trial court's instructions or comments. We held, earlier in our opinion, that the veniremen exhibited no bias or prejudice. The trial court's comments here are nothing more than a further investigation into the bias issue.

Appellants complain Judge Curry "unfairly characterized appellants' counsel as a 'flam-bam' artist" when appellants questioned the veniremen concerning the burden of proof. Appellants' attorney pursued the burden of proof issue which led to the complained of statement in the following manner:

> APPELLANTS' ATTORNEY: Those of you who raised your hands, let me see how many of you would require, before reaching a verdict in this case, if we say that the cause of this explosion was not natural gas, how many of you, based on what you have heard here today, and what you already had in your minds before you came here today, how many of you would require that we bring in some evidence to show that it was not natural gas?
>
> APPELLEE'S ATTORNEY: We object. It's repetitious....
>
> APPELLANTS' ATTORNEY: Your Honor, there are jurors raising their hands that say the Defendant has some burden of proof here, a great many.
>
> THE COURT: *The way you asked the question, Mr. Ross, was an unfair way.*
>
> What the question is, *he is trying to find whether or not you will require him to prove his innocence as you would in a criminal case.*
>
> Well, you know, you should know, and I am telling you right now that the burden of proof is on the Plaintiff, not on the Defendant; because the Defendant doesn't have to prove anything. It's the Plaintiff that has to prove its case....
>
> It's very simple, ladies and gentlemen. Let me tell you again.
>
> In any civil lawsuit it's the plaintiff's burden to prove his or her case by a preponderance of the evidence, that is, the greater weight of the credible testimony or evidence, and it's not up to the Defendant to prove anything.
>
> And I think, depending upon how you ask the question—you are not experienced in all of this, and *these lawyers can flam-bam you all over place,* and I am talking about the Plaintiff and the Defendant. I'm not talking about any one side. It's not, I think, fair.
>
> I'm not saying that Mr. Ross is unfair, and I'm not saying that Mr. LeGrand and Mr. Maloney are fair. They will ask questions that way, too.
>
> But this Court is fair, and I am fair, and I want this case to be tried fairly. I am telling you now it's the plaintiff's burden to prove his or her case by a preponderance of the evidence. The defendant does not have to disprove anything.

Judge Curry did not call appellants' counsel a flam-bam artist. His statement, as he explained it to the jury, referred equally to both parties.

Other comments appellants' complain of are:

> THE COURT: Ladies and gentlemen, you will get the law from me, not from these lawyers.
>
> All you have to do is—it's very simple. You have to sit there, listen to the evidence, and be fair to both sides, or to all three sides. It's simple.
>
> You cannot be in there with your minds made up without having heard any evidence, any more than you can find a man guilty without having heard any evidence, based on things you read in the newspaper, or what you think the facts are from television. It's that simple.

I don't want to be unfair to one side or the other. *I can disqualify each and every one of you if I ask you the questions a certain way, but I know that you want to be fair.* I really believe that....

I'm not trying to be sarcastic. I have respect for all of these lawyers. They are good lawyers, and I think they are honest lawyers. *It's just—the profession seems to do something to people. You can take it from there,* but the truth of the matter is they are trying very hard to get a fair and impartial jury, and all you have to do is follow the evidence—that's all—and arrive at a fair and impartial verdict based strictly on that evidence....

■ Appellants made no objection after any of these remarks and have waived any complaint they may have had. At any rate, after considering the comments and the record of voir dire as a whole we find the trial court did not abuse its discretion in its handling of voir dire. While we do not suggest these comments and instructions are models to be followed by trial courts, our review of the statement of facts leads us to believe that the comments were not reasonably calculated to cause and did not cause the rendition of an improper judgment. *See Silcott v. Oglesby,* 721 S.W.2d 290, 293 (Tex.1986).

Appellants further argue that they were prevented from asking the veniremen questions to establish a strike for cause due to Judge Curry's conduct and comments during voir dire. However, the record does not indicate what questions they were prevented from asking—no bill of exceptions was made or requested to be made—or that any panel member was discouraged from responding to any question. We presume that the rulings of the trial court are correct, and we will consider only matters shown by the record. In order for us to reverse the judgment of the trial court appellants must present us with a record which affirmatively shows that an error was committed, and that it was calculated to injure them. *Zeh v. Singleton,* 650 S.W.2d 518, 520 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Fenton v. Wade,* 303 S.W.2d at 817.

We overrule appellants' fifth point of error.

Appellants complain the trial court erroneously continued with the case after the federal court obtained exclusive jurisdiction and in the absence of a written order of remand and adequate notice to appellants.

After plaintiff Lamprecht rested, attorneys for appellants moved to dismiss defendants City Public Service Board and City of San Antonio from the case because no evidence as to their liability had been presented. Appellants also moved to take a nonsuit of their cross-action against these defendants once they were dismissed from plaintiff's suit. The trial court granted the motion and the following occurred:

APPELLANTS' ATTORNEY: And at this time, Your Honor, we would complete the process of removing this matter to federal court by filing with the court the notice of removal. Petition for removal is on file.

APPELLEE'S ATTORNEY: The case can't be removed, not as action by the Court that dismissed the parties, Your Honor.

THE COURT: Under the circumstances, then I will change my mind. I will not grant your motion.

APPELLANTS' ATTORNEY: The case has been removed to federal court, Your Honor.

THE COURT: How has it been removed?

APPELLANTS' ATTORNEY: That paper that I just filed.

THE COURT: I just overruled myself.... I just denied your motion on the record as far as the third party Plaintiff, as far as the City of San Antonio.

APPELLANTS' ATTORNEY: Your Honor, the case has been removed for federal court. We have no more business here.

THE COURT: It has not. I am telling you right now I am going to proceed to judgment with this case.... The City is still in it.

The trial court made the following statement for the record:

Let the record reflect that after Plaintiff had rested, the Defense Counsel, James E. Ross, and his associate, Cindy Garcia, and Mr. Ed Fahey, another Defense Counsel, approached the bench, made a motion that the City of San Antonio and City Public Service Board be granted an instructed verdict.

The Court, without first considering the matter, granted the Motion, not realizing that, in the first place, Counsel, Mr. Ross, and Mr. Fahey, and Ms. Garcia, had no authority to make a motion for the City of San Antonio. The City of San Antonio and City Public Service Board had not made a motion.

In any event, the Court then retracted the previous granting of the Motion and asked Counsel for the Defendant, and each of them, to proceed with the trial. Counsel, Mr. James Ross, Mr. Ed Fahey, and Ms. Cindy Garcia, then abruptly and without permission of the Court left the courtroom and stormed out, saying that the case was going to be removed, would be removed, and was removed to the Federal District Courts for the Western District of Texas.

The Court then proceeded. The City of San Antonio rested, the Plaintiff closed, the City of San Antonio closed, and the charge was prepared....

After the jury returned its verdict and was excused, the trial court stated in open court that while the court was reading the charge to the jury, it received a telephone call from the federal district court's office "with the information that Judge Prado had not signed, and did not intend to sign, a stay order. In other words, Judge Prado realized and apparently wanted The Court to continue with the case."

A defendant in a civil suit in a state court may remove the cause to federal court during the pendency of the case by filing a verified petition for removal, copies of all process, pleadings, and orders served on him in that action, and a bond with the federal court. 28 U.S.C.A. § 1446(a), (d) (West 1973 and West Supp.1987).

"Promptly after the filing of such petition for removal of a civil action and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." 28 U.S.C.A. § 1446(e) (West Supp.1987).

A removing party has sufficiently complied with section 1446(e) when he makes an oral announcement, in open court, that he has removed the cause to federal court provided he tenders a copy of the petition for removal to the state court at the same time. *Adair Pipeline Co. v. Pipeliners Local Union No. 798*, 203 F.Supp. 434, 437 (S.D.Tex.1962), *aff'd*, 325 F.2d 206 (5th Cir. 1963). The state court's jurisdiction is then abated and the federal court obtains exclusive jurisdiction pending its review of the removal.

█ In our case, a notice was handed to the trial court. However, the record does not in any way indicate that appellants gave the trial court or the clerk of the state district court a copy of the removal petition. In this case we are totally helpless, through appellants' failure to provide us with a complete record, to review their complaint. In the absence of a complete record, we must presume the trial court ruled correctly based on the materials it had before it. *Moore v. Horn*, 359 S.W.2d 947, 950 (Tex.Civ.App.—Beaumont 1962, writ ref'd n.r.e.); *see Hydro-Line Manufacturing Co. v. Pulido*, 674 S.W.2d 382, 385 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

The state court and federal court have concurrent jurisdiction during the period between the filing of the petition for removal and the bond in federal court and the filing of a copy of the petition for removal and the written notice in state court. *Berberian v. Gibney*, 514 F.2d 790, 792, 793 (1st Cir.1975). The federal court does not obtain exclusive jurisdiction until all the requisites of section 1446(e) are met. *Delavigne v. Delavigne*, 402 F.Supp. 363, 365–66 (D.Md.1975), *aff'd*, 530 S.W.2d 598

(4th Cir.1976); *Ramahi v. Hobart Corp.*, 47 Or.App. 607, 615 P.2d 348, 353 (1980). At most, the record brought before us indicates appellants failed to effectively remove jurisdiction from the state court because no copy of the removal petition was ever filed in the state court. *Id.*, at 365, 366.

Since the state court retained concurrent jurisdiction with the federal court, the state court proceedings are valid. Appellants voluntarily absented themselves from the state courtroom while the state court maintained jurisdiction. Any error concerning the court's proceeding without appellants is totally due to appellants' action in voluntarily leaving the courtroom. The trial court committed no error and committed no abuse of discretion in continuing with the trial under these circumstances. *See Jones v. John's Community Hospital*, 624 S.W.2d 330, 332 (Tex.App.—Waco 1981, no writ) (mere absence of party does not entitle him to continuance); *Manges v. Ragsdale Engineering Co.*, 591 S.W.2d 301, 303 (Tex.Civ.App.—Waco 1979, no writ) (counsel did not appear at trial and did not file motion for continuance, thus trial court did not err in commencing trial). We overrule appellants' sixth and seventh points of error.

Appellants raise several legal sufficiency of the evidence questions. In reviewing a legal sufficiency point we consider only the evidence and the reasonable inferences to be drawn from it in their most favorable light to support the jury's findings and we disregard all contrary evidence and inferences. *McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 207 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981). We will affirm the judgment if there is some evidence to support the findings. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 904 (Tex.1980).

Appellant Brentwood complains there is no evidence that June Hayes was employed by Brentwood Financial Corporation.

Special issue number one asked:

Do you find from a preponderance of the evidence that JUNE HAYES was employed in a managerial capacity and acting in the course and scope of her employment, for any or all of the following parties, at the time and on the occasion in question:

Answer "Yes" or "No"

BRENTWOOD FINANCIAL CORPORATION ‗‗‗

CHATEAU ORLEANS LIMITED ‗‗‗

The jury answered "yes" to both questions.

■ In order to hold a master or employer liable for injuries caused a third party by a servant or employee, the plaintiff must establish a master-servant or employer-employee relationship. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 589 (Tex.1964). To determine whether such a relationship exists, the plaintiff must prove the employer had the right to control the *details* of the employee's work. *Id.*; *Eagle Trucking Co. v. Texas Bitulithic Co.*, 590 S.W.2d 200, 211 (Tex.Civ.App.—Tyler 1979), *aff'd in part and rev'd in part on other grounds*, 612 S.W.2d 503 (Tex.1981). A presumption arises that every person found performing the work of another is in the employment of the person whose work is being done. *Eagle Trucking Co. v. Texas Bitulithic Co.*, 590 S.W.2d at 212. Further, once the presumption is raised, the defendant has the burden of proof to escape liability by establishing that the workman was an independent contractor. *Id.* The fact that one employer pays the salary of the workman does not establish that the workman is not an employee of another. *Kachmar v. Stewart Title Co.*, 477 S.W.2d 306, 310 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ); *Riverbend Country Club v. Patterson*, 399 S.W.2d 382, 383, 384 (Tex.Civ. App.—Eastland 1965, writ ref'd n.r.e.).

Because this is a no evidence point, we will consider the evidence in its light most favorable in support of the jury's findings.

■ Ken R. Bauman, the corporate representative for Brentwood Financial Corporation and for Chateau Orleans, Ltd. testified that the two companies are separate entities. He stated that Brentwood Financial Corporation was managing Chateau

Orleans, Inc., who owned the apartments. He further stated that Ms. Hayes was an employee of and paid by Chateau Orleans, Ltd., but "reported to Brentwood Financial Corporation." Ms. Hayes collected the rents from the tenants as well as accepted complaints from them. Ms. Hayes was the resident manager of the Chateau Orleans Apartments and was so referred to by the tenants and the parties.

We find this to be some evidence for the jury to find that Ms. Hayes was employed in a managerial capacity for Brentwood Financial Corporation.

■ Appellant Brentwood Financial Corporation contends there is no evidence or insufficient evidence [2] to support special issue number two, in which the jury found appellant to be negligent "by or through JUNE HAYES, or any of [its] agents, servants or employees." Appellant claims that because there is no evidence Ms. Hayes was an employee of Brentwood Financial Corporation there can be no evidence to impute her negligence to it. We have held there was evidence to support the jury's finding that Ms. Hayes was appellant's employee. There is testimony that several residents of the complex reported to Ms. Hayes that they smelled gas, that Ms. Hayes "brushed off" some of the complaints or made excuses for the smell such as "the pilot lights in the stove are off," or "Oh, forget it. You don't smell it," and that Ms. Hayes never reported the complaints to the gas company or the city. We find there is ample evidence to support the jury's finding of negligence. Appellant's eighth and ninth points of error are overruled.

Appellants next contend there is no evidence to support the jury's finding and the trial court's award of punitive damages.[3] Appellants further argue the trial court failed to submit adequate special issues to establish the prerequisites of *King v.*

*McGuff,* 149 Tex. 432, 234 S.W.2d 403 (1950).

■ In order to hold a master or employer liable for punitive damages due to the gross negligence of its employee, the plaintiff must establish:

1) the employer authorized the doing and the manner of the act,

2) the employee was unfit and the employer was reckless in employing him,

3) the employee was employed in a managerial capacity and was acting within the scope of his employment, or

4) the employer or a manager ratified or approved the act. *King v. McGuff,* 149 Tex. 432, 234 S.W.2d at 405.

The trial court submitted a special issue, which the jury answered affirmatively, asking whether June Hayes was *employed in a managerial capacity and* was *acting in the course and scope of her employment* for Brentwood Financial Corporation and for Chateau Orleans, Ltd.

■ The evidence presented was that June Hayes received complaints that a natural gas odor existed. She did not contact the gas company or the city. She did not shut off the gas supply, or request anyone else to do so. She reported it to her company. Someone from the company investigated, detected no odor, and took no further action.

The city fire department maintains guidelines that provide that one smelling natural gas can turn off the gas jets and should call City Public Service.

The evidence is undisputed that Ms. Hayes, Brentwood Financial Corporation, or Chateau Orleans, Ltd. took no steps to shut off the gas or to notify City Public Service, the fire department, or any other city agency. Appellants made their own investigation and determined there were no

---

**2.** Appellants' claim that the evidence is insufficient is waived because they failed to brief that contention. *Bobbitt v. Womble,* 708 S.W.2d 558, 560 (Tex.App.—Houston [1st Dist.] 1986, no writ); *DeAnda v. DeAnda,* 662 S.W.2d 107, 110 (Tex.App.—San Antonio 1983, no writ); TEX.R. APP.P. 74(f).

**3.** In their reply brief, appellants also argue the evidence is factually insufficient on this issue. The points raised for the first time in appellants' reply brief are waived. *Gabriel v. Snell,* 613 S.W.2d at 813; *Krumb v. Porter,* 152 S.W.2d at 495.

leaks because they did not smell any gas. Ken Bauman, appellants' corporate representative, never personally smelled the premises but believed the tenants were smelling bug spray rather than natural gas.

The trial court instructed the jury that " 'Heedless and reckless disregard' means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it." The jury found both Brentwood Financial Corporation and Chateau Orleans, Ltd. acted with a heedless and reckless disregard of the rights of others.

There is evidence appellants acted with a heedless and reckless disregard of the rights of the tenants and that evidence is sufficient to uphold the jury's findings in special issue number four. The trial court did not err in awarding punitive damages.

In their reply brief, appellants raise the argument that appellee failed to submit a special issue that Ms. Hayes, acting in a managerial capacity, in the course and scope of her employment, acted negligently. The points raised in the reply brief present new points of error not timely filed and therefore not properly preserved. We will not consider the reply brief to the extent that it presents new points of error. *Gabriel v. Snell*, 613 S.W.2d 810, 813 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ); *Krumb v. Porter*, 152 S.W.2d 495, 496–97 (Tex.Civ.App.—San Antonio 1941, writ ref'd n.r.e.).

We find the trial court has committed no reversible error and that there is evidence to support the jury's findings. Appellants' points of error are overruled and the judgment of the trial court is affirmed.