In the Matter of the ESTATE OF
Clifton Lewis TURNER,
Deceased.

No. 11–07–00050–CV.

Court of Appeals of Texas,
Eastland.

Aug. 7, 2008.

710

Dana Smith, Brownwood, for appellant.

Don W. Clements, Brownwood, for Betty appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a will contest arising from an application to probate the photocopy of a missing will. The trial court conducted a bench trial and ordered the photocopy admitted to probate. Finding no error, we affirm.

### I. Background Facts

Clifton Lewis Turner[1] fatally shot himself on March 2, 2006. His sister, Betty Glaze, filed an application to probate a will not produced in court and attached a photocopy of a will that she contended Lewis executed in 1990. The will named Glaze executrix and sole beneficiary of Lewis's estate. Glaze advised the court that she had diligently searched for Lewis's original will but had been unable to locate it, that Lewis gave her a copy of his will after executing the original, and that the attached photocopy was an accurate copy of

---

1. Mr. Turner went by "Lewis." To avoid confusion, we will refer to him as Lewis and to his brother Jack Turner as Jack.

the original. Glaze identified herself, her brother Jack Turner, and her sister Yvonne Cottrell as the individuals who would inherit Lewis's estate in the absence of a valid will. Jack and Yvonne opposed Glaze's application, contending that Lewis revoked the 1990 will before his death. The trial court granted Glaze's application and admitted the photocopied will to probate.

## II. *Issues on Appeal*

Jack and Yvonne challenge the trial court's order with three issues. They contend that Glaze produced legally and factually insufficient evidence to overcome the presumption of revocation and that the trial court erred by excluding a statement Lewis made to his daughter indicating his intention to leave his estate to her.

## III. *Analysis*

### A. *Evidentiary Challenge.*

Jack and Yvonne called Courtney Stegemoller as a witness. Stegemoller was Lewis's daughter. She had also opposed Glaze's application for probate, but the trial court dismissed her contest for lack of standing. The trial court found that the parent-child relationship between Stegemoller and Lewis was terminated by court order in 1987 and that she had no right to inherit any portion of his estate.

Stegemoller testified that she and her father did not have a significant relationship until she was eighteen. She invited him to her high school graduation and thereafter began seeing him. Lewis discussed his estate planning during one of their visits. When she began to repeat Lewis's statement, Glaze asserted a hearsay objection. Jack and Yvonne responded that Stegemoller's testimony was not hearsay because it was not offered for the truth of the matter asserted or, alternatively, that it was admissible to show Lew-

is's state of mind. The trial court sustained the objection and Stegemoller made a bill of review. Stegemoller testified that the conversation took place last October and that Lewis told her "he had taken care of everything, and if he ever did pass away everything would be [hers]." This was the last time she ever spoke with him.

### 1. *Standard of Review.*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex. 1995). We will reverse the trial court's decision only if it acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). If we find error, we must conclude that the error affected a substantial right, thereby probably causing the rendition of an improper judgment before we can reverse. *Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131, 144 (Tex.2004).

### 2. *Hearsay.*

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). Jack and Yvonne contend Stegemoller's testimony was not hearsay but do not explain why or otherwise brief this point. It has, therefore, been waived. *See Morrill v. Cisek,* 226 S.W.3d 545, 548–49 (Tex. App.–Houston [1st Dist.] 2006, no pet.). Even so, Stegemoller's testimony is clearly hearsay. It was not offered to prove an operative fact, such as the fact that a conversation occurred, but was offered to

show that Lewis had revoked his will because his statement—if believed—indicated a new testamentary intent. The trial court did not err by finding that Stegemoller's testimony was hearsay.

Jack and Yvonne argue alternatively that Stegemoller's testimony was admissible under the state of mind exception. TEX.R. EVID. 803(3) provides:

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Commentators have noted that, when this exception is applied to statements made by a testator, it "applies only to a testator's statement that 'relates to the execution, revocation, identification, or terms' of his will." 2A Steven Goode et al., *Texas Practice: Courtroom Handbook on Texas Evidence* 515 (2007 ed.) (citing *Barnum v. State*, 7 S.W.3d 782, 789–90 & n. 5 (Tex. App.–Amarillo 1999, pet. ref'd)).

The trial court did not err by finding this exception inapplicable. The challenged testimony may have been considered relevant to establish that Lewis had executed a new will naming Stegemoller as his sole beneficiary, but Jack and Yvonne's position was that Lewis died intestate. Consequently, its exclusion was not harmful to them. Alternatively, even though the excluded testimony did not directly refer to a prior will, the testimony may have been considered relevant to establish revocation since a bequest to Stegemoller would have been inconsistent with the terms of Lewis's 1990 will. But its exclusion cannot be considered harmful on this basis either.

Two uninterested witnesses testified that they saw Lewis's will shortly before his death and well after Stegemoller and Lewis's last conversation. Betty Webb was Lewis's longtime girlfriend. She testified that Lewis showed her his will several times including the day of his death. Lewis also showed his will to Webb's niece, Lisa Sliger, a few days before his death. Stegemoller's excluded testimony does not directly support Jack and Yvonne's position that Lewis had no will but suggest that he had a new one. Consequently, for Jack and Yvonne to prevail on their objection, the trial court necessarily had to disregard Glaze's, Webb's, and Sliger's testimony that Lewis showed them his will shortly before his death, believe Stegemoller's testimony that Lewis intended to leave her his estate, and disbelieve Stegemoller's testimony that Lewis had already taken care of everything. The record does not allow us to conclude that the admission of Stegemoller's testimony would have probably led to such a result. Issue No. Three is overruled.

## B. Legal and Factual Sufficiency Challenges.

Jack and Yvonne requested and the trial court entered findings of fact. Jack and Yvonne contest only the finding that Lewis did not revoke his 1990 will contending that the evidence is legally and factually insufficient to overcome the presumption of revocation.

### 1. Presumption of Revocation.

When the original will cannot be located and the will was last seen in the testator's possession, a presumption arises that the testator destroyed the will with the intent of revoking it. *Hibbler v. Knight*, 735 S.W.2d 924, 927 (Tex.App.–Houston [1st Dist.] 1987, writ ref'd n.r.e.). The proponent must overcome this pre-

sumption by a preponderance of the evidence. *In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex.1988). This can be accomplished with proof of circumstances contrary to the presumption or with evidence that some other person fraudulently destroyed the will. *In re Capps*, 154 S.W.3d 242, 245 (Tex.App.–Texarkana 2005, no pet.). Courts have held that evidence the decedent recognized his will's continued validity and had continued affection for the chief beneficiary of his will, without evidence that he was dissatisfied with the will or had any desire to cancel or change it, is sufficient proof of circumstances contrary to the presumption. *See Id.* at 245–46; *Sparkman v. Massey's Estate*, 297 S.W.2d 308, 311 (Tex.Civ.App.–Dallas 1956, writ ref'd n.r.e.).

### 2. *Standard of Review.*

 A trial court's findings of fact in a bench trial are reviewed for legal and factual sufficiency under the same standards used to review a jury's verdict on jury questions. *Girdner v. Rose*, 213 S.W.3d 438, 445 (Tex.App.–Eastland 2006, no pet.). In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the prevailing party, indulging every inference in their favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

### 3. *The Evidence.*

 Lewis was divorced and lived alone. He and his former wife had one daughter but his parental rights were terminated in 1987. The parties stipulated that Lewis executed a valid will in 1990 and that the photocopied will attached to Glaze's application was a true and correct copy of that will. Lewis showed his will to a number of people. Glaze saw it less than one week before his death. Webb saw it the day he died. Sliger saw and read it in late February.

Webb was with Lewis for several hours the day that he shot himself. She arrived at his house at three o'clock in the afternoon. They went and checked his cattle, stopped at her brother's house, and were back at his home at seven. Lewis showed her his will and then returned it to its usual storage location: a three-shelf wall unit typically used for items such as letters and bills. He sat down in his recliner and watched television for one and one-half hours before going to his bedroom. When Webb went to check on him, he asked her to leave. She heard a shot. She ran back into the bedroom. When she realized what had happened, she called 911 and Glaze.

When police and emergency personnel arrived, Webb was taken outside and was not allowed to reenter Lewis's house. Glaze and her husband Bill Glaze went to Lewis's house in response to Webb's call but were not allowed to enter either. Lewis was taken to the Brownwood hospital and was then airlifted to San Angelo. Glaze and her husband drove to San Angelo. Jack and Yvonne were called, and they too went to the San Angelo hospital. Lewis shot himself Thursday night and was pronounced dead late Friday night. Everyone returned home early Saturday morning after completing paperwork. Webb, Glaze, and Bill went to a local funeral home that morning to arrange for Lewis's burial. While they were there, Jack called and asked to borrow Lewis's house key. Jack went inside Lewis's house and looked around. He noticed that

Lewis's gun cabinet was empty. The cabinet had been locked and contained several guns when the police were there. Jack also noticed that there was no evidence of the shooting. Jack testified that Bill arrived while he was still there and told him that he had cleaned up Lewis's bedroom and that there were no guns in the cabinet because Lewis had previously sold them. Bill, however, denied being in Lewis's house, denied cleaning up the shooting, denied knowing anything about Lewis's guns, and denied telling anyone otherwise.

Stegemoller admitted entering Lewis's house after the funeral. She testified that she and her husband Josh briefly looked around and that they took Lewis's dog, but she denied taking anything else. Other testimony put her there days sooner. Robert Johnson, Lewis's neighbor and friend, testified that he saw an unknown man and woman at Lewis's house on Saturday. They introduced themselves as Lewis's daughter and "Jack." Johnson also testified that he saw three or four teenagers or young adults rummaging around in Lewis's house the day he shot himself. They arrived after the police had left and were there for at least one-half hour before he went to bed.

Glaze discovered on Saturday that Lewis's will was not in the folder where he normally kept it. She searched the remainder of the house and a second house that he owned and had previously lived in. Bill looked through two boxes of Lewis's paperwork. Glaze then went through Lewis's trash. They were unable to locate the will.

When all the evidence is reviewed in the light most favorable to the trial court's order, it is legally sufficient to overcome the presumption of revocation. There was testimony of a close relationship between Lewis and Glaze but not Jack and Yvonne, and no evidence of a "falling out" or other recent discord. Lewis's will left everything to Glaze. Lewis also named her his beneficiary on non-testamentary assets including a bank account and an investment account. What happened to the original will is unclear, but there was no evidence that he physically destroyed it. In fact, several witnesses testified that Lewis showed it to them shortly before his death. There was also no evidence that he made any changes to his non-testamentary asset beneficiary designations. Issue No. One is overruled.

The evidence is also factually sufficient. The question of what happened to the original will has understandably bedeviled the parties. Jack and Yvonne spend much of their brief directing our attention to evidence that indicates they did not destroy it and to evidence that contradicts the testimony of other witnesses. For example, they question Johnson's testimony about four teenagers being in Lewis's house after the police left, pointing out that nothing was broken into and that the teenagers would not have turned on the lights as Johnson described if they were attempting to vandalize the house. They point to evidence that Webb, Glaze, and Bill had immediate access to Lewis's house but that they did not. They note that, according to Jack's testimony, Lewis's bedroom had already been cleaned and Lewis's guns taken before he ever entered the house and contend that Bill was lying to the court. They also contend that Webb's credibility is questionable because of alleged inconsistencies between her trial testimony and her conduct shortly after Lewis's death.

Jack and Yvonne's argument invites this court to reassess the credibility of the witnesses. This we may not do. In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their

testimony. *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 425 (Tex.App.–Eastland 2006, no pet.). The court may accept or reject all or any part of that testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580–81 (Tex.App.–Houston [1st Dist.] 1997, pet. denied).

The trial court could reasonably find the presumption of revocation was rebutted with evidence of fraudulent destruction or with proof of circumstances contrary to the presumption. If Johnson's testimony is believed, four teenagers were in Lewis's house the night he shot himself and Stegemoller and her husband were there shortly after Lewis's death. The trial court could reasonably accept this testimony and conclude that the will was taken as part of a robbery or vandalism or that Stegemoller took it because it did not name her as a beneficiary. The court could have also concluded that Bill's testimony was more credible than Jack's and determined that Jack took the will when he was alone in Lewis's house Saturday morning.

Alternatively, the court could have found Webb's, Sliger's, and Glaze's testimony credible and concluded that the surrounding circumstances were inconsistent with revocation. No witness questioned the relationship between Glaze and Lewis. The trial court could consider the lack of any significant discord between them, the fact that Lewis showed his will to at least three people in the week before his death, and that Lewis made no changes to any of his non-testamentary asset beneficiary designations and could have reasonably concluded that Lewis did not revoke the 1990 will.

The trial court was presented with conflicting evidence on what Lewis may have said or done with regard to his estate planning, on who had access to his house and when, and on whether individual witness's testimony was credible. The trial court's resolution of this conflicting evidence in favor of probating the will was predicated upon factually sufficient evidence. Issue No. Two is overruled.

### IV. *Holding*

The trial court's order admitting the will to probate is affirmed.