# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00799-CV

---

**Margaret Gonzales, Appellant**

**v.**

**Carol Patterson and Leola Carman, Appellees**

---

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 12,472, THE HONORABLE BENTON ESKEW, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Margaret Gonzales appeals from the trial court's order granting Carol Patterson's motion for traditional and no-evidence summary judgment and dismissing Gonzales's will contest and related claims. In ten issues, Gonzales contends that the trial court erred when it: (i) deferred ruling on and then overruled her evidentiary objections; and (ii) granted summary judgment against her. For the following reasons, we affirm the trial court's order.

## BACKGROUND

In 1991, Leola Carman (Carman) married Charles Carman (Decedent), and they remained married until he died at the age of 91 on July 26, 2022. Patterson is one of Carman's two daughters from a prior marriage, and Gonzales is one of Decedent's four children from a prior marriage.

In November 2022, Patterson filed a first amended application to probate Decedent's Last Will and Testament (the Will) that he signed in August 2021 and for issuance of letters testamentary.[1] Under the terms of the Will, Decedent appointed Carman to serve as independent executor and, if she was not able or available, Patterson; Decedent bequeathed and devised the property in his estate to Carman if she survived him; and he bequeathed and devised the property to his descendants who survived him per stirpes if Carman did not survive him. Decedent defined his descendants to include Carman's two daughters but not his four children, stating his "intention to make no provisions in this Will for [his children], and they are familiar with the reasons." The Will was attested to and signed by two witnesses and notarized. *See* Tex. Est. Code § 251.051 (generally requiring will to be in writing, signed by testator, and attested to and signed by two or more credible witnesses in testator's presence). The witnesses were the attorney who prepared the Will and one of his employees.

Prior to the Will being admitted to probate, Gonzales filed a petition contesting the Will and seeking to have it found invalid and set aside. Gonzales denied that the Will was executed in accordance with the formalities of Texas law; asserted that it was void; and alleged that it should be set aside because of undue influence, fraud, duress, and lack of testamentary capacity.

In May 2023, Patterson filed a motion for traditional and no-evidence summary judgment. She sought traditional summary judgment on Gonzales's claims of lack of testamentary capacity, undue influence, and execution without formalities and no-evidence summary judgment on Gonzales's claims of fraud and duress. Patterson characterized the Will

---

[1] Carman, as the named executor in the Will, filed the initial application to probate the Will, but she was unable to continue as the executor and applicant because of health issues.

2

as "self-proving," *see id.* § 251.101 (defining self-proved will), and asserted that there was no genuine issue of material fact to prevent the Will from being admitted to probate and that there was no evidence of one or more of the elements of Gonzales's claims of fraud and duress. She supported the motion with summary-judgment evidence: (i) Exhibit A, a copy of the Will; (ii) Exhibit B, the affidavit of the notary public to the Will; (iii) Exhibits C and D, the affidavits of one of the attorney's employees and the attorney who were witnesses to the Will; and (iv) Exhibit E, the affidavit of Carman.

Gonzales filed a response to the motion with objections to the affidavits (Exhibits B to E) and summary-judgment evidence that included an unsigned draft of Carman's will, Decedent's durable power of attorney, the transcript of Carman's deposition that was taken in July 2023, and exhibits from her deposition. When she was deposed, Carman was 95 years old. Carman testified that she signed a new will on the same day that Decedent signed the Will. She explained that they had signed wills that were prepared by the same attorney "about 10 years ago,"[2] but that Decedent wanted to make changes to his will. She testified that as to his four children, Decedent did what he wanted to do for them before he died by giving them money "up front." A short time after he signed the Will, Carman testified that Decedent went to the bank by himself and purchased a payable-on-death certificate of deposit (CD) for each of his four children with "[o]ur money." Carman also testified that prior to the day that they signed the new wills, she and Decedent had met with the attorney about preparing new wills and that she was in the room when Decedent signed the Will. She further testified that it was not apparent that Decedent was sick until "[a]bout probably a month or so before he died," that he did not have

---

[2] The evidence was that the prior wills were destroyed after the new ones were signed.

3

memory issues "until just before he passed away," and that he told her "[a] number of times" that he did not want his children in the Will.

Patterson filed a reply to Gonzales's response that addressed Gonzales's objections to the affidavits (Exhibits B to E). At the beginning of the summary-judgment hearing, Gonzales's counsel asked for a ruling on the objections to the summary-judgment evidence "before we move on to argument." The trial court responded that he had read the objections but that he was "going to withhold ruling on the objections until [he heard] the whole motion for summary judgment." He also confirmed that he had already read Patterson's motion and Gonzales's response but that he had not read Patterson's reply to the response. After the parties concluded their arguments, the trial court stated that he was granting the motion for summary judgment. Patterson then presented testimony to prove up the Will and her qualification to serve as the administrator of the estate.

At the conclusion of the hearing, the trial court admitted the Will to probate, confirmed that Gonzales's objections to the affidavits were overruled, and signed an order overruling the objections. The trial court also signed an order probating the Will and authorizing letters testamentary. Approximately one week after the hearing, the trial court signed the order granting Patterson's motion for summary judgment and dismissing Gonzales's will contest and all related claims. Gonzales filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**ANALYSIS**

**Challenges to Trial Court's Evidentiary Rulings**

Gonzales's first five issues challenge the trial court's evidentiary rulings. In her first issue, she argues that the trial court erred by deferring its ruling on her evidentiary objections until after hearing argument on the merits of Patterson's motion for summary judgment and "expressing its intent to grant the Motion." In Gonzales's second through fifth issues, she contends that the trial court erred in overruling her objections to the affidavits (Exhibits B to E).

*Standard of Review*

"The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings." *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (quoting *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163–64 (Tex. 2018)); *accord Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009). We review a trial court's ruling to admit or exclude evidence for an abuse of discretion. *National Liab. & Fire Ins. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). A trial court abuses its discretion "by acting 'without reference to any guiding rules and principles.'" *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Further, a trial court's error in admitting or excluding evidence is reversible only if it probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1).

*Trial Court's Rulings on Evidentiary Objections*

In her first issue, Gonzales argues that "it was unreasonable and harmful error for the trial court to defer its evidentiary rulings until after hearing argument and ruling on the merits" of the motion for summary judgment. She argues, "The deferral allowed the trial court to consider the challenged evidence in making its decision on the merits and—in turn—allowed the arguments on the merits to inform its decision to subsequently overrule [her] evidentiary challenges." At the beginning of the hearing, however, the trial court advised the parties that he already had read the motion for summary judgment and response, and Gonzales did not object when the trial court stated that he was "going to withhold ruling on the objections until [he heard] the whole motion for summary judgment." Thus, Gonzales has not preserved this issue for our review. *See id.* 33.1(a) (stating prerequisites for preserving complaint for appellate review).

Further, even if she had preserved the issue, Gonzales has not cited, and we have not found, authority that would prohibit a trial court from deferring its ruling on evidentiary objections until after hearing the parties' arguments as to the merits of a summary-judgment motion. *See generally* Tex. R. Civ. P. 166a(c) (describing summary-judgment proceedings). In the case that Gonzales cites to support this issue, the trial court refused to rule at all on evidentiary objections. *See Alejandro v. Bell*, 84 S.W.3d 383, 388 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (holding that appellant preserved complaint that "trial court erred by refusing to rule on his objections to appellee's summary judgment evidence" because "record shows the trial court refused to rule on appellant's objections"). In contrast, in this case, the trial

court confirmed on the record that he was overruling the objections and signed an order overruling the objections.[3]

Moreover, given our conclusions below that the trial court did not err in overruling her objections, Gonzales has not shown that deferring the ruling on the objections probably caused the rendition of an improper judgment. *See id.* at 389 (explaining that appellate court may not reverse for erroneous evidentiary ruling unless error probably caused rendition of improper judgment (citing Tex. R. App. P. 44.1)). We overrule Gonzales's first issue.

*Exhibits B and C: Affidavits of Notary Public and Witness*

In her second and third issues, Gonzales contends that the trial court erred in overruling her objections to the affidavits of the notary public and the witness who was employed by the attorney. Her objections were directed to the following statements that were in both affidavits: (i) "I believed [Decedent] to be of sound mind," and (ii) "[Decedent] signed his Will of his own free will and accord, and without any outside influence." Gonzales argues that the trial court should have excluded both affidavits on the grounds that they contained conclusory statements, statements of beliefs, and "improper witness testimony implicitly applying a legal definition—i.e., of testamentary capacity—to the facts."

---

[3] In her reply brief, Gonzales also cites cases from this Court in which we recite that the trial court overruled or sustained evidentiary objections before granting a motion for summary judgment. *See, e.g.*, *McMillan v. Little City Investments, LLC*, No. 03-19-00430-CV, 2020 Tex. App. LEXIS 7940, at *7 (Tex. App.—Austin Sept. 30, 2020, pet. denied) (mem. op.); *Weirich v. IESI Corp.*, No. 03-14-00819-CV, 2016 Tex. App. LEXIS 9906, at *3 (Tex. App.—Austin Aug. 31, 2016, no pet.) (mem. op.). But those cases do not address whether a trial court may defer ruling on evidentiary objections until after hearing argument on the merits of a motion for summary judgment. For example, in *Weirich*, the trial court did not rule on the objections or the motions for summary judgment until "[a]fter a hearing on the motions for summary judgment and the objections to Weirich's summary judgment evidence." *See* 2016 Tex. App. LEXIS 9906, at *3.

7

Affidavits in support of summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex. R. Civ. P. 166a(f). They "must set forth facts, not legal conclusions." *Bell*, 84 S.W.3d at 388. "A conclusory statement is one that does not provide the underlying facts to support the statement" and is insufficient to support summary judgment. *Holloway v. Dekkers*, 380 S.W.3d 315, 323 (Tex. App.—Dallas 2012, no pet.) (citing *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.)); *see Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) ("An affidavit showing no basis for personal knowledge is legally insufficient."). "Statements based on subjective beliefs are no more than conclusions and are not competent summary judgment evidence." *Bell*, 84 S.W.3d at 388 (citing *Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994)); *see Kerlin*, 274 S.W.3d at 668 (explaining that "affiant's *belief* about the facts is legally insufficient").

In her affidavit, the notary public "stated under oath that the following is a correct and complete statement of the facts and matters to which it relates and all the contents thereof are true, complete, and correct to the best of [the notary public's] knowledge":

> My name is [notary public's name] and I am of sound mind and capable of making this affidavit. I am personally acquainted with the facts herein stated;
>
> I am employed at the law office of Will Jenkins and I am routinely asked to serve as a Notary Public for various documents at the law office, including Will Signing Ceremonies for [the attorney].
>
> I served as the Notary Public to the Last Will and Testament of [Decedent] when he signed his Will. [Decedent], [the attorney] and [the attorney's employee] were sworn to the facts as stated in the Last Will and Testament of [Decedent] and all of us were present at the time of its execution. [Decedent] was personally known to me, was eighteen years of age or over and I believed him to be of sound mind.

8

[Decedent] signed his Will of his own free will and accord, and without any outside influence.

Similarly, in her affidavit, the witness who was employed by the attorney "stated under oath that the following is a correct and complete statement of the facts and matters to which it relates and all the contents thereof are true, complete, and correct to the best of [the witness's] knowledge":

> My name is [witness's name] and I am of sound mind and capable of making this affidavit. I am personally acquainted with the facts herein stated;
>
> I am employed at the law office of Will Jenkins and I am routinely asked to serve as a witness in Will Signing Ceremonies for [the attorney].
>
> I served as a witness, along with [the attorney], to the Last Will and Testament of [Decedent] when he signed his Will. [Decedent] declared to us that the instrument he signed was his Will and he further requested us to act as witnesses to his Will and signature. [Decedent] signed this Will in our presence, all of us being present at the same time. [Decedent] was eighteen years of age or over and I believed him to be of sound mind. [Decedent] signed his Will of his own free will and accord, and without any outside influence.

In their affidavits, the notary public and the witness provided a factual context for their beliefs concerning Decedent's state of mind at the time he signed the Will. They averred that they were present and that Decedent declared to them that the instrument that he was signing was the Will. The notary public also averred that Decedent was personally known to her, and the witness averred that Decedent requested that she act as a witness. Thus, the affidavits affirmatively show that the affiants' beliefs concerning Decedent's state of mind were based on personal knowledge, including their observations of Decedent at the time he signed the Will. *See* Tex. R. Civ. P. 166a(f); *cf. Kerlin*, 274 S.W.3d at 668 (concluding that affidavit did not raise fact

9

issue about event that occurred in 1840s because "nothing in the affidavit affirmatively shows how [affiant] could possibly have personal knowledge about events occurring in 1840s").

As to her argument that their affidavits were improper witness testimony that implicitly applied the legal definition of testamentary capacity to the facts, Gonzales cites the principle of law that "[n]o witness, whether expert or non-expert, is permitted, over proper objection, to state his opinion as to the legal capacity of a person to make a will, because the determination of the existence of testamentary capacity involves the application of a legal definition to the facts." *See Lindley v. Lindley*, 384 S.W.2d 676, 682 (Tex. 1964) (citing *Brown v. Mitchell*, 31 S.W. 621, 629 (Tex. 1895)). But the notary public and the witness did not opine that Decedent had the legal capacity to make a will; rather, based on their personal knowledge including their presence when Decedent signed the Will, they opined about the condition of Decedent's mind at that time. *See Speck v. Speck*, 588 S.W.2d 853, 854 (Tex. App.—Houston [14th Dist.] 1979, no writ) (stating that witness cannot opine that testator has legal capacity to make will but that witness can opine "as to the condition of the decedent's mind at the time of the execution of the will"); *see also In re Estate of Parrimore*, No. 14-14-00820-CV, 2016 Tex. App. LEXIS 1937, at *23–24 (Tex. App.—Houston [14th Dist.] Feb. 25, 2016, no pet.) (mem. op.) (in appeal from bench trial, describing witnesses' testimony that decedent "appeared to be of sound mind" on day he executed will and that "he knew he was executing his will" as "direct evidence" of decedent's "general mental condition on the day his will was executed" and determining that evidence was sufficient to show testamentary capacity); *Singleton v. Carmichael*, 305 S.W.2d 379, 383 (Tex. App.—Houston 1957, writ ref'd n.r.e.) ("Where a non-expert witness has had sufficient contact with the testator and has had opportunity to observe, and has observed him, the witness may express an opinion that he is of sound mind

10

without detailing the facts which are the basis of the opinion."); *see also* Tex. Est. Code § 251.1045 (including within portion of form to be included in will and signed by witnesses for self-proving of will that the witnesses "believe the testator to be of sound mind").

Thus, we conclude that the trial court did not abuse its discretion in overruling Gonzales's objections to the affidavits of the notary public and witness and overrule her second and third issues.

*Exhibit D: Affidavit of Attorney*

In her fourth issue, Gonzales contends that the trial court erred in overruling her objections to the affidavit of the attorney who prepared the Will and signed it as a witness. Gonzales argues that the trial court should have excluded this affidavit on the grounds that it contained conclusory statements and inadmissible hearsay.

In his affidavit, the attorney "stated under oath" that the affidavit's contents were "true, complete, and correct to the best of [his] knowledge." He then averred about his professional background and practice, which included preparing wills; that he was the attorney who prepared the Will; that he was present and a witness to its execution; and that the notary public and the other witness were also present. As to Decedent's state of mind at the time he signed the Will, the attorney averred:

> I knew [Decedent] for over thirty (30) years. [Decedent] contacted me in July 2021 about wanting to update his Will. He and I met in my office on July 28, 2021, and thoroughly discussed his desires and wishes that he wanted to express in his Will and his Will was prepared based on those desires and wishes. [Decedent] also knew who his children were (as stated in the Will) and understood the likely disposition (intestate succession) of his estate should he die without leaving any lawful Will. [Decedent] also understood that this Will would revoke all previous Wills and Codicils he may have made.
>
> . . . .

11

[Decedent] executed his Will of his own free accord, without reservation, and without any outside influence. No one, including [Carman], exercised any influence over what [Decedent] expressed his intentions were as stated in his Will.

At the time of signing the Will, [Decedent] expressly knew and understood the effect of making his Will, as well as the nature and bounty of his property. [Decedent] was of sound mind and had sufficient memory to assimilate the elements of executing a Will, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them.

Beyond any minimum legal requirements for executing a Will in Texas, [Decedent] appeared as I had known him for over thirty (30) years through the Masonic Lodge and his employment at FCI-Bastrop where he worked with my mother. [Decedent] inquired about how my parents were doing since he had known both my parents for a long period of time and we also discussed my family.

Making similar arguments as she did to the notary public's and witness's statements in their affidavits, Gonzales contends that the following statements in the attorney's affidavit were conclusory: (i) Decedent executed the Will of "his own free accord, without reservation, and without any outside influence"; (ii) "no one, including [Carman], exercised any undue influence over what [Decedent] expressed his intentions were as stated in his Will"; (iii) Decedent "expressly knew and understood the effect of making his Will, as well as the nature and bounty of his property"; and (iv) Decedent "was of sound mind and had sufficient memory" to execute the Will.

Like the affidavits of the notary public and witness, the attorney provided the underlying factual basis of his beliefs concerning Decedent's state of mind at the time Decedent signed the Will. In addition to being present when Decedent signed the Will, the attorney's beliefs were based on his thirty-year relationship with Decedent. *See In re Estate of Parrimore*, 2016 Tex. App. LEXIS 1937, at *23–24; *Singleton*, 305 S.W.2d at 383. Thus, we conclude that the trial court did not err in overruling Gonzales's objections that were based on her argument

12

that the attorney's affidavit contained statements that were conclusory. *See In re Estate of Gomez*, No. 04-05-00300-CV, 2005 Tex. App. LEXIS 9740, at \*25 (Tex. App.—San Antonio Nov. 23, 2005, no pet.) (mem. op.) (stating that testimony of attorney who prepared will and averred that "testatrix was of sound mind when she executed the will constitute[d] some evidence . . . on the issue of testamentary capacity"); *Krumb v. Porter*, 152 S.W.2d 495, 497 (Tex. App.—San Antonio 1941, writ ref'd) (concluding that testimony of attorney who prepared will could properly be considered in determining whether testator "had the necessary testamentary capacity at the time of the execution of the will").

As to her hearsay objection, Gonzales contends that the following statements in the attorney's affidavit were inadmissible:

> [Decedent] contacted me in July 2021 about wanting to update his Will. He and I met in my office on July 28, 2021, and thoroughly discussed his desires and wishes that he wanted to express in his Will and his Will was prepared based on those desires and wishes.

Gonzales argues that these statements were offered to prove the truth of the matters asserted— "that Decedent's intentions are accurately reflected in the Will and that no one exercised any undue influence over him," *see* Tex. R. Evid. 801 (defining hearsay), and that the "state of mind" exception to the rule against hearsay does not apply, *see id.* R. 803(3). Under that exception, the following type of statement is not excluded by the rule against hearsay:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

*Id.*

13

Assuming without deciding that the statements that Gonzales challenges in the attorney's affidavit would be considered hearsay, they fall within the "state of mind" exception because they address Decedent's then-existing state of mind—his intent and plan for changing his will—when he initially met with the attorney and when he later executed the Will. Further, even if the challenged statements could be characterized as statements of memory or belief, they would be admissible under this exception because they relate to the terms of Decedent's will. *See id.*

For these reasons, we conclude that the trial court did not abuse its discretion in overruling Gonzales's objections to the attorney's affidavit and overrule her fourth issue.

*Exhibit E: Affidavit of Carman*

In her fifth issue, Gonzales contends that the trial court erred in overruling her objections to Carman's affidavit. Gonzales argues that the trial court should have excluded Carman's affidavit on the ground that it contained inadmissible hearsay. Specifically, Gonzales challenged the statements in Carman's affidavit that are italicized:

> My name is Leola Carman, I am over the age of 18 years and of sound mind, and I am capable of making this affidavit. I am personally acquainted with the facts stated herein.
>
> In July 2021, my husband [Decedent] asked me to get the copy of his will. He wanted to see what it said. After looking at it, *he said he wanted to change it*. He then made an appointment with [the attorney] to prepare new wills for us.
>
> [Decedent] told me he was going to have Certificates of Deposit in the amount of $50,000.00 made for each of his children that could be drawing interest. He was not including them in the new will because, *in his words, "they have never done a thing for me."* [Decedent] wanted both our wills to make it clear that his biological children were not part of his or my estate.
>
> On August 3, 2021, the day of the Will signing, we both read our Wills, and [Decedent] *said that it was exactly what he wanted*. At the time we executed the

14

> new Wills and after we discussed the POD accounts gifted to [Decedent's] kids, *[he] told me that "the rest of it is yours."*
>
> On August 5, 2021, [Decedent] went to the bank to prepare four CDs for his four children in the amount of $50,000 each.

Gonzales argues that the italicized statements constitute out-of-court statements to prove the truth of the matters asserted—"that Decedent's intentions are accurately reflected in the Will" and that "Carman, the primary beneficiary under the Will, did not exercise any undue influence over Decedent or obtain the Will by fraud or duress, and that Decedent had testamentary capacity."

For the same reasons that we stated above as to the attorney's statements, even if the statements in Carman's affidavit that Gonzales challenges are hearsay, they fall within the "state of mind" exception because they address Decedent's then-existing state of mind—his intent and plan for changing his will and the disposition of his property. *See* Tex. Evid. R. 803(3). We also observe that under the "Dead Man's Rule," a party may testify about oral statements made by a deceased person if the statements are corroborated. *See id.* R. 601(b)(3)(A). In this case, Carman's testimony about Decedent's statements is corroborated by the other affidavits, the Will itself, and the evidence that Decedent obtained the four CDs for his children shortly after executing the Will, consistent with Carman's testimony about his stated plan for the disposition of his property. *See Escamilla v. Estate of Escamilla*, 921 S.W.2d 723, 726–27 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (stating that "[c]orroborating evidence may come from any other competent witness or other legal source" and explaining that it "must tend to confirm and strengthen the testimony of the witness and show the probability of its truth").

15

As support for her position that the trial court erred in overruling her objections to Carman's affidavit, Gonzales cites *In re Estate of Turner*, 265 S.W.3d 709, 711–12 (Tex. App.—Eastland 2008, no pet.), but the facts in that case are distinguishable. The appeal was from a trial court's order admitting the photocopy of a missing will to probate, and the controversy between the parties was whether the will had been revoked. *Id.* at 710. On appeal, the appellants challenged the trial court's exclusion of a purported statement by the decedent that "he had taken care of everything, and if he ever did pass away everything would be hers." *Id.* at 711. Our sister court concluded that this statement was hearsay and that the state-of-mind exception to the rule against hearsay did not apply. *Id.* at 711–12. But, unlike Carman's challenged testimony, the purported statement in that case conflicted with the terms of the will, and the issue in that case was whether the will was revoked, not its validity when it was executed—i.e. there was no challenge to decedent's state of mind when he executed the will. *See id.*

Because we conclude that the challenged statements in Carman's affidavit were not inadmissible hearsay, we conclude that the trial court did not abuse its discretion in overruling Gonzales's objections to Carman's affidavit and overrule Gonzales's fifth issue.

**Summary Judgment**

Gonzales's remaining five issues challenge the trial court's order granting traditional summary judgment on her claims of lack of testamentary capacity, undue influence, and execution without formalities and no-evidence summary judgment on her claims of fraud and duress.

We review the trial court's summary-judgment ruling de novo. *See Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under this standard, we view "the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive*, 644 S.W.3d at 173 (quoting *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)).

"A party moving for traditional summary judgment must prove that no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023); *see* Tex. R. Civ. P. 166a(c). A movant seeking a no-evidence summary judgment must assert that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on the challenged elements. *Id.*; *see JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) (explaining that "no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion").

"A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "The evidence does not create an issue of material fact if it is 'so weak as to do no more than create a mere surmise or

17

suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

### *Lack of Testamentary Capacity*

In her sixth issue, Gonzales argues that the trial court erred in granting summary judgment on the issue of testamentary capacity because a genuine issue of material fact exists as to whether Decedent lacked testamentary capacity at the time the Will was executed. Gonzales relies on her objections to the affidavits and argues that there is a fact issue as to whether Decedent "understood the effects of making a will—i.e., one requirement for testamentary capacity"—primarily relying on Carman's deposition testimony to create a fact issue.

Because Gonzales asserted her challenge to Decedent's testamentary capacity before the Will was admitted to probate and Patterson sought traditional summary judgment as to this claim, it was Patterson's burden to establish as a matter of law that Decedent possessed testamentary capacity at the time he executed the Will. *See In re Estate of Graham*, 69 S.W.3d 598, 605–06 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *see also* Tex. R. Civ. P. 166a(c); *Bracewell v. Bracewell*, 20 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (explaining that "to form a valid will, in Texas, the testatrix must have had 'testamentary capacity' when the will was executed" (citing *Chambers v. Chambers*, 542 S.W.2d 901, 906 (Tex. App.—Dallas 1976, no writ))).

"Testamentary capacity has been defined by Texas courts to mean 'sufficient mental ability, at the time of the execution of the will, to understand the business in which the testatrix is engaged, the effect of her act in making the will, and the general nature and extent of her property.'" *Bracewell*, 20 S.W.3d at 19 (quoting *Hoffman v. Texas Com. Bank Nat'l Ass'n*,

18

846 S.W.2d 336, 340 (Tex. App.—Houston [14th Dist.] 1992, writ denied)); *see id.* (observing that Texas courts "have defined the term 'sound mind' to mean 'testamentary capacity'" (quoting *Chambers*, 542 S.W.2d at 906)); *see also* Tex. Est. Code § 251.001 (stating that generally "person of sound mind has the right and power to make a will"). "The testatrix must also know her next of kin and the natural objects of her bounty, and she must have 'sufficient memory to assimilate the elements of the business to be transacted, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them.'" *Bracewell*, 20 S.W.3d at 19 (quoting *Jones v. LaFargue*, 758 S.W.2d 320, 325 (Tex. App.—Houston [14th Dist.] 1988, writ denied)); *see also Lindley*, 384 S.W.2d at 683 n.1 (setting out elements of testamentary capacity).

The attorney, his employee, and the notary public averred that they were present when Decedent signed the Will, and based on their personal knowledge, they believed Decedent to be of sound mind at that time. *See In re Estate of Parrimore*, 2016 Tex. App. LEXIS 1937, at *23 (in appeal from bench trial, concluding that "direct evidence from multiple witnesses" that decedent "appeared to be of sound mind" on day he executed will and that "he knew he was executing his will" was some evidence of testamentary capacity); *In re Estate of Gomez*, 2005 Tex. App. LEXIS 9740, at *25 (stating that testimony from attorney who prepared will and from attesting witness to will that "a testatrix was of sound mind when she executed the will constitute[d] some evidence . . . on the issue of testamentary capacity").

The attorney also averred that Decedent knew who his children were, the effect of making the Will, and the nature and extent of his property. *See Chambers*, 542 S.W.2d at 907–08 (observing that Texas Supreme Court "has held that in a will contest, the layman witness may be asked, assuming he knows, whether the testator knew or had the capacity to know the objects

19

of his bounty, the nature of the transaction in which he was engaged, or the nature and extent of his estate" (citing *Carr v. Radkey*, 393 S.W.2d 806, 813 (Tex. 1965))). And the attorney's opinion of Decedent's state of mind at the time he signed the Will was based on knowing Decedent for over thirty years and his observations of Decedent at the time he signed the Will, including the attorney's discussion with Decedent about the attorney's parents and Decedent's family. *See, e.g.*, *In re Estate of Graham*, 69 S.W.3d at 606 (stating that when there is no direct evidence, testator's mental condition may be determined from lay opinion testimony based on witness's observations of testator prior to and subsequent to execution of will as long as "some evidence exists demonstrating that the condition persists and has some probability of being the same condition that existed at the time the will was made").

Gonzales argues that there is a fact issue about testamentary capacity as to whether Decedent understood the effects of making a will because "[o]n the one hand," Carman testified Decedent wanted to set up the CDs for his four children, but "on the other hand," Carman testified that he "wanted to exclude his children from his Will because 'they have never done a thing for [Decedent].'" Gonzales argues that because Decedent left $200,000 to his children, "reasonable minds could differ in their conclusions as to whether Decedent understood the effect of the disinheritance language in his Will." She also argues that there is a fact issue because of the no-contest clause and the term that his children were not beneficiaries in both the Will and Carman's will[4] because there was no need for a no-contest clause to discourage a will contest when his children were not beneficiaries.

---

[4] In her will, Carman left her property to Decedent if he survived her, except she bequeathed a life estate to Decedent as to her interest in a residential homestead.

20

The issue of testamentary capacity, however, turns on the condition of Decedent's mind when the Will was executed, not the interplay between terms in the Will and Carman's will. *See, e.g., In re Estate of Parrimore*, 2016 Tex. App. LEXIS 1937, at *18 (concluding that decision to leave none of estate to sons did not negate evidence that testator possessed testamentary intent); *Dickson v. Swain*, No. 14-05-00062-CV, 2006 Tex. App. LEXIS 8369, at *17 (Tex. App.—Houston [14th Dist.] Sept. 26, 2006, no pet.) (mem. op.) (explaining that testatrix "has the right to dispose of her property in any manner that she may desire if her mental ability meets the law's tests" and that "[i]t is not for courts, juries, relatives, or friends to say how property should be passed by will, or to rewrite a will for a testatrix because they do not believe she made a wise or fair distribution of her property").

In addition to the affidavits, in her deposition and consistent with the attorney's testimony, Carman testified that the attorney had prepared their previous wills, that she and Decedent met with the attorney about preparing new wills, and that she was present when Decedent signed the Will. She also testified that Decedent did not have memory issues "until just before he passed away," that he told her multiple times that he did not want his children in the Will, that his plan was to purchase CDs for his children, and that he purchased the CDs shortly after he signed the Will. Patterson's evidence about Decedent's state of mind, which was not controverted, establishes that Decedent "was lucid and comprehended what he was doing when he executed his will" and negates Gonzales's claim that Decedent did not have testamentary capacity to execute the Will. *See In re Estate of Graham*, 69 S.W.3d at 607 (citing evidence from decedent's long-time friend that decedent was of "sound mind and knew exactly what he was doing" to negate "allegation that [decedent] did not have the requisite testamentary capacity to execute a valid will" and observing from evidence that decedent "was fully aware

21

that he was making a will bequeathing his entire estate to his two nieces and not leaving anything to the contestants"); *cf. In re Estate of O'Neil*, No. 04-11-00586-CV, 2012 Tex. App. LEXIS 7376, at *21–22 (Tex. App.—San Antonio Aug. 31, 2012, no pet.) (mem. op.) (holding that evidence consisting of affidavits in which affiants testified to "long history with [decedent], his deteriorating health, and opined that he was not capable of conducting business or in complete control of his mental faculties" around time that will was executed showed existence of material fact issue as to decedent's testamentary capacity at time of will's making).

Applying the applicable standard of review, we conclude that Patterson established as a matter of law that Decedent possessed testamentary capacity at the time he signed the Will and that Gonzales did not present evidence to raise a genuine issue of material fact. *See Zive*, 644 S.W.3d at 173. We overrule Gonzales's sixth issue.

*Undue Influence*

In her seventh issue, Gonzales argues that the trial court erred in granting summary judgment on her claim of undue influence because a genuine issue of material fact exists as to whether Carman exercised undue influence over Decedent in the procurement of his Will.

"Undue influence implies the existence of testamentary capacity, but occurs when there is evidence showing the testator is subject to and controlled by a dominant influence or power." *Monariti v. Monariti*, No. 14-23-00062-CV, 2024 Tex. App. LEXIS 6476, at *7 (Tex. App.—Houston [14th Dist.] Aug. 29, 2024, no pet. h.) (mem. op.) (citing *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963)). "Not every influence exerted on a person is undue." *In re*

22

*Estate of Graham*, 69 S.W.3d at 609. "It is not undue unless the free agency of the testator was destroyed and the will produced expresses the wishes of the one exerting the influence." *Id.*

The elements of an undue-influence claim to set aside a will are: (1) "the existence and exertion of an influence," (2) "the effective operation of that influence so as to subvert or overpower the testator's mind at the time of the execution of [the will]," and (3) "the execution of [the will] which the maker would not have made but for such influence." *Monariti*, 2024 Tex. App. LEXIS 6476, at *7. "[E]ach element is necessary to establish a claim of undue influence." *Id.* (quoting *In re Estate of Sidransky*, 420 S.W.3d 90, 95 (Tex. App.—El Paso 2012, pet. denied)). Further, "[a] solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing." *Rothermal*, 369 S.W.2d at 922–23.

Because the trial court granted traditional summary judgment on Gonzales's undue-influence claim and each element of this claim is necessary, Patterson was entitled to summary judgment if her evidence conclusively negated one of the elements. *Monariti*, 2024 Tex. App. LEXIS 6476, at *7. Factors relevant to the first element of an undue-influence claim include the circumstances surrounding the drafting and execution of the will, the existence of a fraudulent motive, and whether the testator was habitually under another's control. *Id.* at *7–8 (citing *Rothermel*, 369 S.W.2d at 923). Factors relevant to the second element include the testator's state of mind at the time he executed the purported will, the testator's mental or physical incapacity to resist or the susceptibility of the testator's mind to the type and extent of the influence exerted, the testator's words and acts, and the testator's weakness of body and mind. *Id.* at *10–11. Factors relevant to the third element include the testator's "stated desires

23

and actions" and whether "the will executed is unnatural in its disposition of the testator's property." *Id.*

Gonzales contends that purported inconsistencies between Carman's deposition testimony and her affidavit create a fact issue. She relies on the testimony from Carman's deposition that: (i) the only change that Decedent wanted to make to his will was to exclude his children; (ii) Decedent did not appoint any of his children as executor because he said that they have never done one thing for him; (iii) it was his idea to disinherit his children; (iv) she did not discuss with him why he wanted to treat her daughters as his own; (v) her new will did not make changes from her prior will; (vi) Decedent may have said that she was "his brain" because "he couldn't remember something sometimes or some name, or—he would ask me"; (vii) Decedent did not have a durable power of attorney; and (viii) he had to cease travelling twelve to thirteen years before his death for health reasons. Decedent had been diagnosed with cancer 15 to 20 years before his death. Gonzales attempts to create a fact issue based on Carman's lack of explanation or purported inconsistencies in her testimony such as: (i) Carman's purported lack of explanation for why she updated her own will when she testified that it was substantially the same as her prior one;[5] (ii) a purported inconsistency between Carman's deposition testimony and her affidavit about Decedent's statement that his children had never done a thing for him: in her affidavit, she testified that was his reason for not wanting to include his children in the Will, and in her deposition, she testified that was his reason for not naming them as executors; (iii) her

---

[5] As Patterson observes in her brief,

Any reasonable person understands that when a husband and wife procure a typical estate planning package from an attorney, both wills are updated at the same time. . . . There is good cause to update a will containing similar dispositions as a previous version, such as to ensure that witnesses will be able to be located in the event they are needed. In addition, it is common practice for both spouses' wills to have virtually identical provisions.

24

deposition testimony that he did not have a durable power of attorney when in fact he did; and (iv) a purported inconsistency between her deposition testimony and her affidavit about who made the appointment with the attorney to update their wills.

Gonzales, however, did not present evidence to controvert the evidence from the affidavits that when Decedent met with the attorney to discuss updating his will and when he signed the Will in August 2021 he was of sound mind; that he was acting of his own free will; and that he had the ability to understand and convey his desires for the disposition of his property, including that he did not want his children to receive property under the Will. *See Littell v. Johnson*, No. 04-99-00616-CV, 2000 Tex. App. LEXIS 5623, at \*12 (Tex. App.—San Antonio Aug. 23, 2000, no pet.) (mem. op.) (explaining that "mere opportunity to exert influence is not enough to prove undue influence" and that "[o]pportunity must be coupled with evidence that an improper influence existed and that the influence was exercised at the time the disputed will was executed"). In addition to the affidavits, Carman testified in her deposition that after Decedent signed the Will and consistent with his plan for his children, Decedent purchased the CDs for his children. Carman also testified that it was not apparent that Decedent was sick until about one month before he died in July 2022, that he did not have memory issues "until just before he passed away," and that he told her multiple times what he intended to do concerning the Will. Carman also answered, "No," when asked if she ever suggested to him to treat her children as his own in the Will. And she testified that Patterson and Decedent "got along" fine.

Viewing the evidence under the applicable standard of review, we conclude that Patterson's evidence negated Gonzales's claim of undue influence by Carman and that Gonzales did not present evidence raising a genuine issue of material fact on this claim. *See In re Estate of Graham*, 69 S.W.3d at 610–11 (concluding that "record [was] devoid of any evidence of undue

25

influence" and explaining that "there must be some testimony, direct or circumstantial, to show influence was not only present but that it was in fact exerted with respect to the making of the testament itself" (quoting *Rothermal*, 369 S.W.2d at 923)); *Horton v. Horton*, 965 S.W.2d 78, 88 (Tex. App.—Fort Worth 1998, no pet.) (explaining that although evidence that husband had cancer and was in considerable pain most of time "indicates that [wife] had opportunity to exert influence over [him] in the execution of the will, there [was] simply no evidence that she did so" and that there was "no evidence that would tend to prove that [his] mind was in fact subverted at the time he executed the will").

Thus, we conclude that the trial court did not err in granting Patterson's traditional motion for summary judgment on Gonzales's undue-influence claim. *See Zive*, 644 S.W.3d at 173. We overrule Gonzales's seventh issue.

*Execution Without Requisite Formalities*

In her eighth issue, Gonzales argues that the trial court erred in granting summary judgment on her claim that the Will was executed without the requisite formalities. Relying on Carman's deposition testimony, she argues that a genuine issue of material fact exists as to the element of attestation because of Carman's "inconsistent statements regarding the presence of [the] purported" witness who was employed by the attorney. *See* Tex. Est. Code § 251.051(3) (generally requiring will to be "attested by two or more credible witnesses who are at least 14 years of age and who subscribe their name to the will in their own handwriting in the testator's presence"). She argues that Carman's deposition testimony was inconsistent about whether this witness was present when Decedent signed the Will.

26

The Will includes an executed form in compliance with Section 251.1045 of the Texas Estates Code. *See id.* § 251.1045; *see also id.* § 251.102(a)(2) (authorizing court to admit will to probate without testimony of subscribing witness if will is simultaneously executed, attested, and made self-proved as provided in Section 251.1045). Thus, the Will was self-proved, and the prima facie validity of the Will was established. *See In re Estate of Graham*, 69 S.W.3d at 603 (explaining that although validity of self-proved will can be challenged, "self-proving affidavit constitutes prima facie evidence of the will's execution"). The affidavits also conclusively established that the Will was executed with the requisite formalities, including complying with the attestation requirement—that it was attested to and signed by two or more credible witnesses in testator's presence. *See* Tex. Est. Code § 251.051.

Gonzales relies on Carman's original response in her deposition about who was present when her husband signed the Will to argue that it was inconsistent with the attestation clause stating that the witness was present, but Carman timely amended her deposition response to state that she did not "recall who all was in the room at the will signing." *See* Tex. R. Civ. P. 203.1(b) (addressing procedure for making changes to deposition responses). Although Carman did not provide a reason for this amendment and, during the deposition, did not recognize the name of the attorney's employee who witnessed the signing of the Will, the fact that Carman did not remember the witness's name is understandable given that the deposition was taken approximately two years after the Will was signed. Gonzales has not cited, and we have not found, authority that would support that by amending her deposition response about who was in the room when Decedent signed the Will, Carman created a fact issue on the attestation element to preclude summary judgment. We overrule Gonzales's eighth issue.

27

*Fraud and Duress*

In her ninth and tenth issues, Gonzales argues that the trial court erred in granting no-evidence summary judgment on the issue of fraud because she "produced more than a mere scintilla of evidence that the Will was procured by fraud on the part of Appellee Carman" and on the issue of duress because she "produced more than a mere scintilla of evidence that Decedent executed the Will under duress."

"A claim that a will was procured through fraud requires proof of some kind of misrepresentation." *In re Estate of Graham*, 69 S.W.3d at 612 (citing *Guthrie v. Suiter*, 934 S.W.2d 820, 832–33 (Tex. App.—Houston [1st Dist.] 1996, no writ)); *see Littell*, 2000 Tex. App. LEXIS 5623, at *13–14 (stating elements of fraud). And "[a] common element of duress in all its forms . . . is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878–79 (Tex. 2005); *see Weinberg v. Baharav*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that to avoid summary judgment on affirmative defense of duress, party was required to present evidence that he was threatened with improper or unlawful conduct that was imminent and that was intended to and did interfere with his exercise of free will and judgment).

Gonzales's argument "incorporates by reference her reasoning" that the trial court erred in granting summary judgment on her claim of undue influence. *See Winn v. Daniel*, 386 S.W.2d 293, 296 (Tex. App.—Fort Worth 1965, writ ref'd n.r.e.) (explaining that undue influence "may take the nature of . . . duress . . . or deception used in an effort to overcome or subvert the will of the maker of the testament and induce the execution thereof contrary to his will" and that "courts of Texas treat the exertion of such influence in the execution of a

dispositive instrument as a species of legal fraud" (quoting *Rothermel*, 369 S.W.2d at 922)). But we have concluded that the trial court did not err in granting summary judgment on that claim, and Gonzales has not cited evidence that would support that the Will was procured because Carman made a material misrepresentation to Decedent or that Decedent was under duress when he signed the Will because of improper or unlawful conduct by Carman. *See Weinberg*, 553 S.W.3d at 134 (explaining that "duress must be established based on conduct of the party accused"); *Littell*, 2000 Tex. App. LEXIS 5623, at *14 (concluding that trial court did not err in granting summary judgment on fraud claim because there was no evidence that appellee made material representation to decedent or appellants). Thus, we conclude that the trial court did not err in granting no-evidence summary judgment on Gonzales's claims of fraud and duress. We overrule her ninth and tenth issues.

## CONCLUSION

For these reasons, we affirm the trial court's order granting Patterson's motion for traditional and no-evidence summary judgment and dismissing Gonzales's will contest and related claims.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed: October 17, 2024

29